# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **SAFE CHOICE, LLC** | : | **Case No.: 1:24-CV-02033-PAB** |
| | : | |
| **Plaintiff,** | : | **JUDGE**: PAMELA A. BAKER |
| | : | |
| **vs.** | : | <u>**PLAINTIFF'S BRIEF IN OPPOSITION**</u> |
| | : | <u>**TO DEFENDANT'S MOTION FOR**</u> |
| | : | <u>**JUDGMENT ON THE PLEADINGS**</u> |
| **CITY OF CLEVELAND** | : | <u>**REGARDING ITS AMENDED**</u> |
| | : | <u>**COMPLAINT**</u> |
| **Defendant.** | : | |

NOW COMES Safe Choice, LLC, by and through undersigned counsel, respectfully submits its Brief in Opposition to Defendant City of Cleveland's Motion for Judgment on the Pleadings regarding its Amended Complaint. Defendant's motion mischaracterizes Plaintiff's Amended Complaint, ignores key factual allegations, and advances legal arguments that are contrary to controlling Sixth Circuit and Supreme Court precedent. As demonstrated in the attached brief opposition, Defendant's motion must be denied.

Respectfully submitted,

Arleesha Wilson, Esq. (0097351)
Law Office of Arleesha Wilson
600 Superior Avenue. Suite 1300
Cleveland, Ohio 44114
216-278-7543 (office)
833-938-2002 (fax)
justice@attorneyawilson.com

*Attorney for Plaintiff Safe Choice, LLC*

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ....................................................................................................................3

I.     INTRODUCTION .........................................................................................................................4

II.    STATEMENT OF FACTS ..............................................................................................................4

III.   JUDGMENT ON THE PLEADINGS STANDARD ...........................................................................5

IV.   LAW AND ARGUMENT ..............................................................................................................6

    A.    PLAINTIFF'S AMENDED COMPLAINT CONTAINS WELL-PLEAD FACTUAL DETAIL THAT SHOWS SPECIFIC, ONGOING HARM TO PLAINTIFF'S BUSINESS OPERATIONS. ................................................................................................... 6

    B.    PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTES OF LIMITATIONS DUE TO THE CONTINUING VIOLATION DOCTRINE. ........ 8

    C.    COUNT ONE FOR DECLARATORY JUDGMENT SHOULD NOT BE DISMISSED AS PLAINTIFF HAS ALLEGED AN ONGOING CONSTITUTIONAL INJURY AND A LIVE CONTROVERSY THAT WARRANTS DECLARATORY RELIEF. ..................................... 10

    D.    PLAINTIFF'S COUNT TWO CLAIM FOR VIOLATION OF EQUAL PROTECTION DOES NOT ASSERT A STANDALONE EQUAL PROTECTION CLAIM UNDER THE OHIO CONSTITUTION, RATHER IT ASSERTS A § 1983 FEDERAL CLAIM WHICH IS A FEDERAL LAW DEEPLY ROOTED IN VIOLATIONS THE US CONSITUTION. ........................................................................................................... 11

    E.    PLAINTIFF DOES NOT RELY ON RESPONDEAT SUPERIOR AND HAS ALLEGED DIRECT MUNICIPAL LIABILITY UNDER MONELL, THUS COUNTS TWO AND THREE MUST STAND. .................................................................................................... 12

    F.    PLAINTIFF HAS ADEQUATELY PLED MONELL LIABILITY UNDER MULTIPLE RECOGNIZED THEORIES. ..................................... 13

    G.    DEFENDANT IS NOT IMMUNE UNDER R.C. § 2744 BECAUSE PLAINTIFF ALLEGES MALICIOUS, BAD FAITH CONDUCT THAT FALLS OUTSIDE STATUTORY PROTECTION. ..................................................................................................... 16

    H.    PLAINTIFF'S § 1985 CLAIM IS SUPPORTED BY SPECIFIC ALLEGATIONS OF RACIALLY MOTIVATED EXCLUSION AND A COORDINATED SCHEME TO BLOCK MINORITY PARTICIPATION IN CITY CONTRACTING. ................................................................... 18

    I.    PLAINTIFF'S CONSPIRACY CLAIMS IN COUNTS THREE AND SIX ARE NOT BARRED BY THE INTRACORPORATE CONSPIRACY DOCTRINE AND ARE SUPPORTED BY A VALID PREDICATE FOR RELIEF. ........................................................................... 20

    K.    PLAINTIFF'S NEGLIGENCE CLAIM IS NOT BARRED BY R.C. § 2744 BECAUSE IT FALLS WITHIN A RECOGNIZED EXCEPTION AND ALLEGES CONDUCT OUTSIDE THE SCOPE OF DISCRETIONARY IMMUNITY. ................................................................... 24

    L.    PLAINTIFF'S DEMAND FOR PUNITIVE DAMAGES IS NOT IMPROPER AT THE PLEADING STAGE SHOULD NOT BE DISMISSED OR STRICKEN. ................................................................................................................................ 26

V.    CONCLUSION ..........................................................................................................................27

    LOCAL RULE CERTIFICATION ........................................................................................................ 28

## SUMMARY OF ARGUMENT

Defendant's second motion for judgment on the pleadings fails to rebut the sufficiency of Plaintiff's Amended Complaint under established federal pleading standards. Plaintiff, Safe Choice, LLC has alleged ongoing exclusion from contracting opportunities based on the continued use of a discriminatory dual vendor list. This is not only a retrospective grievance to address bad actors at the City of Cleveland, but it is also a live controversy with continuing harm, ripe for relief.

Contrary to Defendant's assertions, Plaintiff has pled a valid Monell claim under 42 U.S.C. § 1983 by identifying a longstanding municipal custom and alleging ratification by officials with final decision-making authority. Plaintiff has also properly alleged an Equal Protection violation based on race and a viable conspiracy under 42 U.S.C. § 1985 grounded in class-based animus.

Further, Plaintiff's state law claims of fraud, tortious interference, and conspiracy are pled with the specificity required by Rule 9(b), and they are not barred by statutory immunity under R.C. Chapter 2744, which does not shield municipalities from intentional torts involving malice or bad faith.

For all these reasons, Defendant's Motion for Judgment on the Pleadings regarding Plaintiff's Amended Complaint must be denied so the case may proceed to litigation.

## I.    __INTRODUCTION__

Defendant has a second Motion for Judgment on the Pleadings regarding Plaintiff's Amended Complaint, asserting that Plaintiff's claims fail as a matter of law. Plaintiff Safe Choice, LLC now respectfully responds to clarify that Defendant's arguments misrepresent the allegations in the Amended Complaint, misapply controlling legal standards, and improperly ask the Court to resolve factual disputes that are premature at the pleading state.

Plaintiff has pled detailed and specific facts showing a continuing exclusion from municipal contracting opportunities as a result of Defendant's use of manipulated vendor lists and internal tactics that exclude Plaintiff from being awarded contracts. The allegations state viable claims under federal and Ohio law, including actionable claims under 42 U.S.C. § 1983, § 1985, and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Although defendant seeks shield of government immunity, and has done all it can to escape liability for its bad actors, based on controlling law, this Court can only find that Plaintiff's Amended Complaint has been adequately pled on each element of its state law claims and it invokes exceptions to immunity under Ohio law.

Accordingly, Defendant's motion must be denied in its entirety so that the parties may proceed to litigation and adjudicate this controversy on the merits.

## II.   __STATEMENT OF FACTS__

Safe Choice, LLC ("**Plaintiff**") is a minority-owned security services provider duly registered and in good standing with the State of Ohio. Plaintiff has been in business for nearly fifteen years and has always been certified to do business with the City of Cleveland.

Beginning in 2018 and continuing through the date of this writing, Plaintiff was systematically excluded from bidding opportunities for security contracts, including high-profile events. Despite being a qualified and certified vendor, Plaintiff was intentionally excluded from projects and bids due to the Defendant's manipulation of the vendor list and its bidding process.

During an interview with Detective Todd Clark of Internal Affairs Department of the City of Cleveland, Plaintiff's representatives were shown two versions of a security services vendor list: one that included Safe Choice and another that excluded Safe Choice from key contracts. Detective Clark informed Plaintiff that a charge package was prepared against Commander Mike Butler, who was implicated in the manipulation of these vendor lists. Despite this, no disciplinary action was taken. Butler continued to operate in a similar capacity, influencing contract decisions. This action continued consistently though the date of this writing.

Plaintiff continues to learn information that supports its allegations that two lists are being maintained, and that Defendant is manipulating its contracts to be awarded to companies other than Plaintiff. As such, Plaintiff alleges that Defendant steered business away from Safe Choice and favored competing companies, including Willo Security, LEMS, and Tenable. These companies benefited from contracts awarded and preferential treatment by Defendant's agents, Commander Michael Butler and Harry Gant, who have been found to be affiliated with these companies. It is further alleged that these companies exchanged unreported payouts with city officials, contributing to a customary scheme orchestrated by Michael Butler to exclude Safe Choice from fair competition.

## III.     <u>JUDGMENT ON THE PLEADINGS STANDARD</u>

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6)**.** In ruling on a Rule 12(c) motion, the Court must construe the complaint in the light most favorable to the non-moving party, accept all well-pleaded allegations as true, and draw all reasonable inferences in favor of the plaintiff. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

To survive a motion for judgment on the pleadings, the complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Although detailed factual allegations are not required, a plaintiff must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(c) motion, the Court is limited to the allegations contained in the complaint and may not consider matters outside the pleadings without converting the motion into one for summary judgment. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). However, the Court may consider exhibits attached to the complaint and documents referred to in the complaint that are central to the plaintiff's claims. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Accordingly, the Court must accept as true all allegations in Plaintiff's Amended Complaint and determine whether Plaintiff has stated a plausible claim for relief under the facts alleged. Because Plaintiff has pled detailed facts that show bad actors in the City of Cleveland have steered business away from Plaintiff and openly excluded Plaintiff from being awarded contracts, as referenced throughout the Complaint, Defendant's motion must be denied.

## IV. LAW AND ARGUMENT

### A. Plaintiff's Amended Complaint contains well-plead factual detail that shows specific, ongoing harm to Plaintiff's business operations.

Defendant contends that Plaintiff's Amended Complaint lacks the specificity required under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), asserting that Plaintiff fails to identify the "who, what, where, when, and how" of the alleged harm. This assertion misrepresents the detailed allegations presented in the Amended Complaint.

Plaintiff explicitly alleges that in 2018, Detective Todd Clark informed Plaintiff's principal of the existence of two vendor lists maintained by the City: one that included Plaintiff and another, used for actual contract assignments, from which Plaintiff was excluded. (Am. Compl. ¶ 10). This dual-list

6

system was allegedly orchestrated by Commander Michael Butler, a city official, and was the subject of an internal affairs investigation. Despite the investigation, the discriminatory practice continued, unabated. (Id. ¶ 14). These allegations provide clear details regarding the individuals involved, the nature of the discriminatory practice, the timeframe, and the mechanism of harm.

Furthermore, Plaintiff details ongoing exclusion from specific City events and contracts, including NFL games, parades, and city construction sites, despite being a certified minority-owned security services provider. (Id. ¶¶ 10, 20, 25). These are all specific projects that Defendant, in its motion for judgment on the Pleadings regarding the Amened Complaint, fails to acknowledge, yet erroneously asks this Court to dismiss the complaint and ignore the factual detail provided.

The Amended Complaint also references professional colleagues who sought to hire Plaintiff but were unable to do so due to Plaintiff's exclusion from the City's vendor list. (Id. ¶ 27). These allegations illustrate the tangible, ongoing harm suffered by Plaintiff as a direct result of Defendant's actions. Plaintiff has recently learned of additional actions taken by Defendant just last week that continues the same harm alleged in both complaints.

Defendant's argument that Plaintiff must identify specific contracts it was denied is inconsistent with established legal standards. The Sixth Circuit has recognized that when a plaintiff challenges an ongoing policy or practice, it is not necessary to identify specific instances of harm at the pleading stage. See *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) ("A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment."). Plaintiff's allegations of a continuous exclusionary practice is sufficient to state a plausible claim for relief.

In sum, Plaintiff's Amended Complaint provides detailed, specific allegations that, if proven true, establish a plausible claim for relief under the applicable legal standards. Defendant's motion for judgment on the pleadings should therefore be denied.

### B. Plaintiff's claims are not barred by the statutes of limitations due to the continuing violation doctrine.

Defendant argues that all of Plaintiff's claims are time-barred because the exclusionary conduct allegedly began in 2018, and Plaintiff filed its original complaint on October 21, 2024, more than two years later. It is true that the claims in Plaintiff's Amended Complaint are subject to a two-year statute of limitations.

However, Defendant's argument ignores well-settled law regarding allegations of continuing violations and mischaracterizes the nature of Plaintiff's harm. Most critically, courts recognize an exception to the two-year statute of limitations where the alleged harm is part of a **continuing violation.** In *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997), the Sixth Circuit held that a "continuing violation" occurs when the plaintiff suffers a "fresh injury" from an ongoing policy or practice within the limitations period. Further, nonbinding precedent, the United States District Court, in *Herrin v. Dunham*, 481 F. Supp. 2d 854 (E.D. Mich. 2007), more eloquently holds that "when a defendant's wrongful acts are of a continuing nature, the statute of limitations does not run **until the wrong is abated**" (emphasis added).

That is precisely what Plaintiff alleges in its Amended Complaint. The harm started in 2018 when Defendant's bad actors were outed by its own Internal Affairs investigation. (Am. Compl. ¶ 10). Thereafter, Defendant promised reform and that the "mistake" would be rectified. However, as Plaintiff's complaint clearly alleges, the harm continued. Plaintiff please a continuous action when it states it was "contacted several times throughout the years, by its professional colleagues, who specifically [sought] to hire Plaintiff but could not due to Plaintiff being omitted from the list." (Am. Compl. ¶ 17). This pleads a continuous action. In fact, Plaintiff even learned that just last week a

contract that has been awarded to it for years without fail was re-bid when it was the only bidder, which is yet another unconstitutional injury to Plaintiff. The harm, stems from continuing tortious acts, continues. The controversy is live. Thus, the statute of limitations **has not tolled,** and the Amended Complaint should not be dismissed on that basis. Instead, Defendant must face its bad actions before this Honorable Court and cannot escape its bad actions by moving this court based on technical nuances that misapply law and mischaracterize facts.

Moreover, Defendant's own motion concedes that Plaintiff alleges exclusion "since 2018." That language inherently invokes a pattern of misconduct, not a one-time event. Courts routinely hold that the continuing violation doctrine applies to civil rights claims where discriminatory or retaliatory practices persist into the limitations period. See *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 512 (6th Cir. 2008) (distinguishing between discrete acts and continuing discriminatory practices).

Not only is the statute tolled based on continued harm, the statute of limitations period is also tolled, based on equitable estoppel, as a false representation or concealment exists herein. (*Id.*) here, Defendant's false representation regarding the injury to Plaintiff tolls the statute. Defendant advised Plaintiff that its bad actors were corrected that Plaintiff would not be omitted from future lists. Yet, Plaintiff was omitted, business was steered away, and even was not awarded contracts as of last week. Thus, the harm continues through the date of this writing.

Finally, even if this Court were to find that some portion of Plaintiff's damages accrued more than two years before suit was filed, the doctrine does not bar all relief. It merely limits recovery to injuries occurring within the actionable period. See *Sharpe*, 319 F.3d at 268. Because Plaintiff alleges current and ongoing harm, including exclusion from recent and future opportunities, its claims are timely at least in part and therefore not subject to dismissal on the pleadings. Accordingly, Defendant's motion must be denied on this ground.

9

### C. Count One for Declaratory Judgment should not be dismissed as Plaintiff has alleged an ongoing constitutional injury and a live controversy that warrants declaratory relief.

Defendant argues that Count One should be dismissed because it seeks relief based on past conduct and fails to establish a present controversy. This argument is both factually and legally flawed. The First Amended Complaint alleges a current and continuing exclusion of Plaintiff from the City of Cleveland's vendor list and an ongoing denial of public contracting opportunities. These facts support a justiciable controversy and form a valid basis for declaratory relief.

Federal courts routinely grant declaratory relief where plaintiffs allege that government conduct is continuing and will cause future harm. The Sixth Circuit has made clear that "[w]hen seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (emphasis added). Plaintiff's First Amended Complaint does exactly that. It states that Defendant "continues to maintain and utilize two versions of a security services vendor list," one of which "continues to exclude Plaintiff" and causes ongoing exclusion from "larger, more lucrative public projects." (Am. Compl. ¶¶ 10, 14, 20, 25).

Defendant also cites *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997), and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), for the proposition that past harm is insufficient to support declaratory relief. However, these cases concern pre-enforcement challenges or single instances of harm that are not ongoing institutional exclusions. Here, Plaintiff does not allege a one-time bid denial. Rather, Plaintiff alleges a structural, discriminatory practice that remains in place and continues to bar Plaintiff from competing. This is precisely the type of real and present controversy that declaratory relief is designed to address.

Moreover, Defendant's suggestion that Plaintiff's use of the words "ongoing" or "continued" is mere boilerplate is not supported by the pleadings. The Amended Complaint details how Plaintiff

10

was removed from the operative vendor list used for contracting; how that list remains in use; how the manipulation was the subject of an internal affairs investigation; and how, despite this knowledge, the City took no action to restore Plaintiff's access to contracting opportunities, all while promising this was the action it was taking. These facts are not "conclusory", but rather they are specific, plausible, and supported by real time, events, and individuals.

Defendant's argument that Plaintiff has not identified a particular contract for which it was denied is misplaced. In public contracting cases where the injury flows from a systemic exclusionary practice, as opposed to a single bid, courts do not require the plaintiff to identify a particular contract before proceeding to discovery. See *Kuhnle Bros., Inc. v. Geauga Cty.*, 103 F.3d 516, 522 (6th Cir. 1997) (continuing harm from an ordinance constituted an actionable and ongoing constitutional violation). Plaintiff alleges a standing exclusion from a vendor list that renders it ineligible to compete, regardless of which contract is at issue.

Finally, Defendant's invocation of *Meccon, Inc. v. Univ. of Akron*, 126 Ohio St.3d 231 (2010), and *Cementech, Inc. v. City of Fairlawn*, 109 Ohio St.3d 475 (2006), is inapposite. Those cases dealt with single-instance bid denials, where the only remedy available was injunctive relief prior to contract award. Plaintiff, by contrast, challenges a discriminatory practice that excludes it entirely from the pool of eligible vendors. That distinction is critical. Plaintiff is not simply a rejected bidder, it is a contractor not permitted to bid at all due to an exclusionary policy. Declaratory and injunctive relief are not just appropriate here; they are necessary to prevent the City's ongoing violation of Plaintiff's constitutional and statutory rights. Accordingly, Plaintiff has stated a valid claim for declaratory relief, and Count One must stand as pled.

   **D. Plaintiff's Count Two claim for violation of equal protection does not assert a standalone equal protection claim under the Ohio constitution, rather it asserts a § 1983 federal claim which is a federal law deeply rooted in violations the US Constitution.**

Defendant misrepresents the scope and basis of Plaintiff's Equal Protection claim. To the extent Defendant argues that Count Two should be dismissed because it improperly asserts a private right of action under the Ohio Constitution, that argument is simply a strawman.

Defendant's argument is unconvincing as the amended complaint clearly states that the count is brought "pursuant to . . .Fourteenth Amendment to United States Constitution" (Am. Comp. ¶27(subheading)).  Plaintiff's Amended Complaint does not rely only on the Ohio Constitution as an independent legal basis for its claims.

The passing references to the Ohio Constitution in Paragraph 3 of the Amended Complaint are included for background and to illustrate the City's general obligations under both federal and state frameworks, not as a separate cause of action or source of damages. The Equal Protection claim in Count Two is based on the Fourteenth Amendment to the U.S. Constitution, as enforced through 42 U.S.C. § 1983. (Am. Compl. ¶¶ 28–32). Plaintiff does not ask the Court to recognize a § 1983 claim grounded in state law, nor does it seek state constitutional damages. Accordingly, Defendant's argument is misplaced and Count Two should proceed as a properly pleaded United States Constitutional claim.

### E.  Plaintiff Does Not Rely on Respondeat Superior and Has Alleged Direct Municipal Liability Under Monell, thus counts two and three must stand.

Defendant argues that Counts Two and Three should be dismissed because they rely on a theory of respondeat superior. This is inaccurate. Plaintiff has not alleged that the City is liable solely because of the actions of its employees. Rather, Plaintiff has alleged that the City itself, through its policies, customs, and deliberate inaction, violated Plaintiff's constitutional rights.

It is true that a municipality cannot be held liable under section 1983 based on a theory of respondeat superior. However, a municipality may be held liable when the plaintiff's injury results from a policy, custom, or practice that is attributable to the municipality. This principle is well

12

established in *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978) and is consistently applied by the Sixth Circuit. See *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006).

Plaintiff alleges that the City of Cleveland maintained two vendor lists, and that only one of them was used to award contracts. Plaintiff was excluded from that operative list. Plaintiff further alleges that the dual-list scheme was orchestrated by Commander Michael Butler and was the subject of a City-led internal affairs investigation. Despite this knowledge, City officials failed to take sufficient corrective action to prevent future harm. These allegations are not about a rogue employee acting alone. They are about a discriminatory system that City officials tolerated and allowed to continue.

Where, as here, municipal policymakers are aware of unlawful conduct and choose to ignore it, the municipality can be held liable under § 1983. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989). The facts pled show more than isolated misconduct. They show ratification by the City of an exclusionary practice that has denied Plaintiff access to fair competition for and participation in public contracts.

The same reasoning applies to Plaintiff's conspiracy claim under section 1985. While respondeat superior does not apply to section 1985 claims, Plaintiff is not asserting such a theory. Those words are listed literally nowhere in the Amended Complaint as a claim. Instead, the Amended Complaint alleges a coordinated pattern of exclusion that involved both City officials and preferred private vendors. Plaintiff has alleged specific facts that support the existence of a civil conspiracy to deprive a minority-owned business of equal protection and contracting opportunities. These facts support a viable claim under section 1985. Because Plaintiff has alleged direct municipal liability and not vicarious liability, Defendant's argument fails and Counts Two and Three should proceed.

### F. Plaintiff Has Adequately Pled Monell Liability Under Multiple Recognized Theories.

Defendant argues that Plaintiff has failed to identify any valid Monell theory. However, the First Amended Complaint pleads sufficient facts to support liability under at least two well-established

theories: (1) a widespread municipal custom, and (2) ratification of unconstitutional conduct. Thus, Plaintiff's allegations are more than sufficient under the standards set forth in Twombly and Iqbal.

      1.  <u>Plaintiff has alleged a municipal custom that violated its rights.</u>

A plaintiff can establish Monell liability by showing that a municipality had an informal custom that, though not written into law, was so permanent and well-settled as to carry the force of law. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Board of Cty. Comm'rs v. Brown, 520 U.S. 397, 403–04 (1997).

Plaintiff alleges that the City of Cleveland has, since 2018, maintained two vendor lists: one that includes Plaintiff and one that excludes Plaintiff from eligibility for security-related contracts and services. The City awarded contracts from the exclusionary list despite knowing the list was manipulated by one of its officials. These lists were not secret. Plaintiff was informed of their existence by a detective from the Cleveland Police Department and later learned that the matter had been the subject of a formal internal affairs investigation. No corrective action was taken.

This constitutes a custom within the meaning of Monell. As in Jackson v. City of Cleveland, 925 F.3d 793, 829 (6th Cir. 2019), a repeated, tolerated practice by city employees over time can satisfy the custom element of Monell liability. Plaintiff alleges the same here: an informal practice of exclusion from public opportunities, perpetuated by the City's tolerance and refusal to correct it. The exclusionary conduct has continued for years and still prevents Plaintiff from obtaining work.

These facts sufficiently allege a clear and persistent pattern of conduct and provide more than enough to plausibly state a claim for Monell liability based on a municipal custom.

      2.  <u>Plaintiff has alleged ratification of unlawful conduct by city officials.</u>

Under Monell, a municipality can also be liable where officials with final decision-making authority ratify unconstitutional conduct. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989).

14

Plaintiff does not rely solely on the acts of Detective Butler. Instead, Plaintiff alleges that Butler's manipulation of the vendor list was known to the City through an internal affairs investigation and that despite this knowledge, the City continued to allow contracts to be steered through the same unlawful process. The City allowed Butler to remain in his position and took no steps to correct the structural discrimination, despite actual knowledge.

These allegations meet the standard for municipal ratification. In *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020), the court recognized that ratification can be shown when officials approve or ignore known misconduct, especially where such conduct causes repeated harm. Similarly, in *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013), the court found that a municipality's failure to respond to a known pattern of abuse could amount to ratification.

The City's continued use of the exclusionary list and failure to discipline or remove Butler support an inference that the Defendant ratified the conduct. At this stage, Plaintiff is not required to prove which individual was the "final policymaker." It is enough that the pleadings show that someone with authority had actual knowledge of the misconduct and allowed it to continue.

> 3. <u>Plaintiff Does Not Assert a Failure-to-Train Theory.</u>

Plaintiff's Amended Complaint does not rely on a failure-to-train or failure-to-supervise theory. Defendant's extended argument on this point is misplaced. Plaintiff has not alleged that its injuries were caused by inadequate training or supervisory procedures. Instead, the focus is on a discriminatory practice that was knowingly carried out and tolerated by the city. To the extent this argument is addressed, it should be rejected as irrelevant to Plaintiff's actual theory of the case.

> 4. <u>Plaintiff Has Alleged a Custom of Tolerance and Deliberate Indifference.</u>

The City also argues that Plaintiff fails to plead a Monell claim based on a custom of tolerance or acquiescence of rights violations. That argument fails.

15

A custom-of-tolerance theory requires a showing of (1) a clear and persistent pattern of misconduct, (2) notice to the municipality, (3) a failure to act amounting to deliberate indifference, and (4) that the custom was the moving force behind the injury. See *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Stewart v. City of Memphis*, 788 F. App'x 341, 346–47 (6th Cir. 2019).

Plaintiff has alleged all four elements. The dual vendor list system has operated since at least 2018. The City had actual notice through a formal internal affairs investigation. Despite knowing that a City employee was manipulating the contracting process and accepting kickbacks, the City permitted him to continue in his role and took no remedial steps. This practice continues to exclude Plaintiff from City contracts and functions as a de facto policy of economic exclusion based on race.

At this stage, Plaintiff is not required to identify every instance of similar discrimination, nor to submit evidence of comparable harms to other vendors. The pleading standard under Federal Rule 8 requires only a plausible inference of liability, **not proof**. See *Doe v. DeWine*, 910 F.3d 842, 851 (6th Cir. 2018). Plaintiff's well-pled allegations of deliberate inaction, ongoing harm, and prior investigations provide a sufficient factual basis to support this theory.

### G. Defendant is not immune under R.C. § 2744 because Plaintiff alleges malicious, bad faith conduct that falls outside statutory protection.

Defendant argues that Counts Four, Five, and Six must be dismissed because the City of Cleveland is immune from intentional torts under R.C. Chapter 2744. That argument misstates both Plaintiff's claims and the governing law. The Ohio Supreme Court has made clear that R.C. 2744.03 does not shield a political subdivision from liability when its employees engage in conduct that is malicious, in bad faith, or wanton and reckless. That is precisely the type of conduct Plaintiff has alleged here.

While R.C. § 2744.02(A)(1) provides a general grant of immunity to political subdivisions, that immunity is subject to several exceptions. See *Elston v. Howland Local Schs.*, 113 Ohio St.3d 314, 2007-Ohio-2070, ¶ 10. Even when no exception under R.C. 2744.02(B) applies, immunity can still be lost

16

at the third tier of the analysis if a plaintiff shows that employees acted with malicious purpose, in bad faith, or in a wanton or reckless manner. See R.C. 2744.03(A)(6)(b); see also *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 10.

Plaintiff has alleged exactly that. The First Amended Complaint sets forth that the City's own internal affairs investigation uncovered misconduct by Commander Michael Butler, who manipulated vendor access, solicited kickbacks, and steered business to favored private entities while excluding Plaintiff. Plaintiff further alleges that despite the City's knowledge of this conduct, it allowed Butler to continue operating in his role and did nothing to remedy the exclusionary vendor list that continues to operate today. This is not mere negligence. It is deliberate, knowing, and malicious conduct intended to prevent Plaintiff from competing for public contracts.

Ohio courts have consistently held that when a complaint alleges intentional exclusion, corruption, or discriminatory acts for personal gain, R.C. 2744 immunity does not apply. See *McConnell v. Dudley*, 158 Ohio App.3d 388, 2004-Ohio-4423, ¶ 28 (denying immunity where conduct was allegedly committed with bad faith or malice); *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356 (1994) (municipal immunity lost where employees acted with malicious purpose). Plaintiff's allegations, if proven, describe the type of behavior that falls outside the scope of official duties and into the realm of corrupt personal enrichment and racially motivated exclusion.

Further, the tortious interference and fraud claims arise not from protected governmental functions but from the misuse of public authority to favor private parties. When a municipal employee uses their official position to unlawfully interfere in business relationships or misrepresent eligibility requirements for private benefit, courts have declined to apply blanket immunity. See *Marinelli v. Montgomery County*, 24 Ohio App.3d 217, 220 (2d Dist. 1985) (government employee not entitled to immunity when acting outside the scope of their duties for personal purposes); *Carter v. Cleveland*, 83

Ohio App.3d 580, 586 (8th Dist. 1992) (denying immunity where actions were taken with intent to harm).

Finally, the City's own cited cases recognize that R.C. Chapter 2744 does not apply when liability is imposed by another specific section of the Revised Code. Plaintiff's claims under R.C. 9.312, as alleged in Count One and incorporated into the factual basis for Plaintiff's conspiracy and interference counts, trigger this carve-out. Where a plaintiff alleges exclusion in violation of a statute designed to govern competitive bidding and vendor fairness, immunity cannot shield the municipality from judicial review. See *Cementech, Inc. v. Fairlawn*, 109 Ohio St.3d 475, 2006-Ohio-2991, ¶ 10.

Plaintiff has alleged that the City knowingly permitted a discriminatory contracting system to persist, in violation of public policy and Ohio bidding law. The actions described in the First Amended Complaint are not discretionary policy decisions, they are deliberate manipulations of public contracting mechanisms to harm a minority-owned business. R.C. Chapter 2744 does not immunize the City from accountability for such conduct. For these reasons, Counts Four, Five, and Six should not be dismissed.

### H. Plaintiff's § 1985 claim is supported by specific allegations of racially motivated exclusion and a coordinated scheme to block minority participation in city contracting.

Defendant argues that Count Three fails under *Griffin v. Breckenridge*, 403 U.S. 88 (1971), because the Amended Complaint does not allege a conspiracy motivated by class-based, invidiously discriminatory animus. That argument fails for two reasons. First, Plaintiff expressly alleges racial discrimination against a certified minority-owned business in the allocation of public contracting opportunities. Second, Plaintiff alleges facts demonstrating a coordinated scheme among a City official and private actors to exclude Plaintiff on the basis of race, which satisfies the standard under § 1985(3).

To plead a § 1985(3) claim, a plaintiff must allege (1) a conspiracy of two or more persons, (2) intended to deprive the plaintiff or a protected class of equal protection under the law, and (3) that

18

the conspiracy was motivated by discriminatory animus against that class. See *Griffin*, 403 U.S. at 102; *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007). The Amended Complaint meets this standard.

Plaintiff alleges that a City of Cleveland official, Commander Michael Butler, engaged in a scheme with private security companies to steer public contracts away from Plaintiff and toward non-minority competitors. The mechanism for this exclusion was the creation and use of two vendor lists: one public list that included Plaintiff, and a second, internal list used for actual contract assignments from which Plaintiff was deliberately omitted. These acts were not isolated or accidental. They were systematic, continuous, and executed with intent. The City's own internal affairs investigation uncovered this scheme in or around 2018, and despite knowing about the misconduct, City officials allowed Butler to continue in his position, furthering the exclusion of Plaintiff from City contracts.

These facts go far beyond the conclusory allegations rejected in the cases cited by Defendant. In *Johnson v. City of Fayetteville*, 91 F. Supp. 3d 775 (E.D.N.C. 2015), the plaintiffs failed to allege any conspiracy or factual basis for racial discrimination beyond mere speculation. Similarly, in *Posr v. Court Officer Shield No. 207*, 180 F.3d 409 (2d Cir. 1999), the plaintiff did not plead specific acts or a pattern of conduct targeting him as a member of a protected class. By contrast, Plaintiff here pleads a factual pattern of repeated exclusion, tied to Plaintiff's status as a minority-owned business, carried out over a span of years, and enabled by municipal officials with full knowledge of the scheme.

Plaintiff is not required to prove the subjective motivations of each co-conspirator at the pleading stage. Rather, it must allege a plausible inference of discriminatory purpose. That standard is met here. The exclusionary conduct was directed at a certified minority-owned business. It was facilitated by a City official and private actors working together. It persisted despite internal investigations and City awareness. These facts are more than sufficient to infer the required animus.

19

See *Alexander v. City of Round Lake*, 854 F.3d 866, 872 (7th Cir. 2017) (racially motivated exclusion from municipal bidding process states a claim under § 1985).

Plaintiff has also identified the participants in the scheme, including Butler and preferred vendors, and has detailed the method used to effectuate the exclusion. These allegations are specific, grounded in fact, and plainly meet the standard articulated in *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987), which requires conspiracy claims to be pled with "some degree of specificity." Plaintiff's claim does not rest on formulaic language, but on facts involving real actors, documented investigations, and a pattern of ongoing exclusion based on Plaintiff's minority status.

For these reasons, Count Three states a valid claim under § 1985(3), and the motion to dismiss it should be denied.

## I. Plaintiff's conspiracy claims in Counts Three and Six are not barred by the intracorporate conspiracy doctrine and are supported by a valid predicate for relief.

Defendant argues that Counts Three and Six should be dismissed under the intracorporate conspiracy doctrine and for lack of an actionable underlying tort. Neither argument has merit. Plaintiff has alleged a conspiracy involving both government actors and private entities and has pled specific conduct sufficient to support the underlying torts of fraudulent misrepresentation and tortious interference. The conspiracy claims are therefore legally sufficient and factually supported.

The intracorporate conspiracy doctrine does not bar conspiracy claims involving both public officials and private actors. Courts have repeatedly held that where the conspiracy involves at least one actor outside the governmental entity, the doctrine does not apply. See *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1060 (9th Cir. 1998); *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019). Here, Plaintiff alleges that Detective Michael Butler conspired not only with other City employees, but also with private companies with which he was affiliated, and to which he steered City contracts in exchange for personal gain. This is precisely the kind of public-private coordination that removes the case from the reach of the intracorporate conspiracy doctrine.

Even where a government entity and its employee are named as defendants, courts have declined to apply the doctrine where the employee's actions serve personal interests or fall outside the scope of official duties. See *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840–41 (6th Cir. 1994) (doctrine does not apply when employees act with an independent personal stake); *Thermice Gen. Corp. v. Buckeye Steel Castings Co.*, 1992 WL 230138, at *6 (6th Cir. Sept. 22, 1992) (same). Plaintiff's allegations fit squarely within this exception. The Amended Complaint states that Butler accepted kickbacks and acted in his own economic interest in manipulating vendor access. These actions were not taken on behalf of the City. They were taken to benefit Butler and the private companies he favored.

Further, Count Six alleges a conspiracy that includes not only City employees, but also Butler's associated private entities. The City attempts to recast these as internal to the same legal entity, but that is incorrect. The City and Butler's private security firms are legally distinct. No court has extended the intracorporate conspiracy doctrine to shield a government entity from liability where the conspiracy includes non-government actors. See *Cannon v. City & Cnty. of Denver*, 998 F.2d 867, 879 (10th Cir. 1993) (doctrine does not apply to joint action between city officials and private contractors).

The City's reliance on *Ziglar v. Abbasi*, 582 U.S. 120 (2017), is also misplaced. That case involved federal officials operating within the scope of their employment and adopting a uniform federal policy. Here, the allegations concern a municipal officer coordinating with outside businesses for personal enrichment, in defiance of public policy and in violation of Plaintiff's constitutional and statutory rights.

Defendant's second argument, that Plaintiff has no actionable underlying tort for the civil conspiracy claim, also fails. As discussed in Section G, Plaintiff has pled valid claims for fraudulent misrepresentation and tortious interference, supported by facts that go beyond speculation. Plaintiff alleges that Butler made false statements to others about Plaintiff's qualifications and status in order to direct contracts to his affiliated companies. These allegations support both fraud and interference

21

with business relations. See *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 1999-Ohio-260 (interference with prospective business relationships is actionable when done intentionally and without justification); *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69 (1986) (fraud may be predicated on false representation of a material fact intended to mislead).

Because Plaintiff has stated viable underlying torts, and because the conspiracy involves private actors beyond the City itself, the conspiracy claims are not barred by either the intracorporate conspiracy doctrine or a lack of predicate liability. Accordingly, both Counts Three and Six are properly pled and must stand.

### J. Plaintiff has pled fraud with sufficient particularity as required under rule 9(b) and Ohio law, thus count four must stand.

Defendant argues that Count Four should be dismissed for failure to meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b). That argument fails because Plaintiff's Amended Complaint identifies the specific representations made by the City, when they were made, and how they were false. The Complaint also sets forth the materiality of those misrepresentations, Plaintiff's reliance on them, and the resulting harm. These allegations are more than sufficient to support a claim for fraudulent misrepresentation and concealment under Ohio law.

To state a claim for fraudulent misrepresentation in Ohio, a plaintiff must allege (1) a false representation or concealment of a material fact, (2) made with knowledge of its falsity or utter disregard for the truth, (3) with intent to mislead another, (4) justifiable reliance on the representation or concealment, and (5) injury proximately caused by that reliance. See *Ford v. New Century Mortgage Corp.*, 797 F. Supp. 2d 862, 873 (N.D. Ohio 2011); *Fifth Third Bank v. Cope*, 162 Ohio App.3d 838, 848 (1st Dist. 2005).

Under Rule 9(b), fraud must be pled with particularity. This requires a plaintiff to allege the who, what, when, where, and how of the alleged fraud. See *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). Plaintiff has satisfied this standard.

22

The Amended Complaint alleges that Plaintiff was informed by City representatives that it was an eligible vendor listed on the City's approved security vendor list. Plaintiff relied on that representation and continued investing in business operations in anticipation of being considered for contracts. However, Plaintiff later learned that the City was using a separate, concealed vendor list that excluded Plaintiff. That list was used to award actual contracts, and Plaintiff was never informed that the operative list excluded it. Plaintiff alleges this was done knowingly and with the intent to mislead.

These allegations provide the time frame (2018 through the present), the substance of the misrepresentation (that Plaintiff was included on the vendor list used for contract selection), the actors (City of Cleveland personnel involved in vendor communications and oversight), and the method of concealment (use of an internal list unknown to Plaintiff and contradicted by the City's public representations). Plaintiff also alleges that the City knew of the misrepresentation, failed to correct it, and continued using the concealed list to steer contracts to preferred vendors, despite being informed of the issue during a formal internal affairs investigation. These allegations, taken as true, establish a fraudulent scheme to mislead Plaintiff into inaction, all while continuing a practice of exclusion.

Moreover, the Sixth Circuit has clarified that Rule 9(b) does not require plaintiffs to plead every detail of a fraudulent scheme at the pleading stage. See *U.S. ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (Rule 9(b) is satisfied if the complaint provides fair notice of the fraud and a reasonable opportunity for the defendant to answer the claim). Plaintiff's allegations, which go far beyond formulaic labels and provide the necessary factual detail, easily meet this threshold.

Defendant's reliance on *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003), and *Ford*, supra, is misplaced. In *Yuhasz*, the plaintiff failed to allege any false statements at all. In *Ford*, the complaint lacked even the basic who, when, and what of the alleged fraud. Here, Plaintiff alleges all of those elements with specificity and context, including a timeline, parties involved, the nature of the

misrepresentation, and the resulting loss of business and opportunity. For these reasons, Count Four

states a valid claim for fraudulent misrepresentation and concealment, and should not be dismissed.

> **K. Plaintiff's negligence claim is not barred by R.C. § 2744 because it falls within a recognized exception and alleges conduct outside the scope of discretionary immunity.**

Defendant argues that Plaintiff's negligence claim, specifically for negligent hiring, supervision,

and retention of Michael Butler, is barred by R.C. Chapter 2744. That argument fails because the City's

immunity under the statute is not absolute, and Plaintiff's claim plausibly falls within the statutory

exception for negligence in the performance of proprietary functions, as set forth in R.C.

2744.02(B)(2). In addition, Plaintiff alleges a pattern of deliberate disregard for public safety and

compliance, which may constitute conduct outside the scope of protected discretionary functions.

Under R.C. 2744.02(A)(1), political subdivisions generally enjoy immunity for damages

resulting from the performance of governmental or proprietary functions. However, R.C.

2744.02(B)(2) provides an exception to immunity where the injury is caused by "the negligent

performance of acts by their employees with respect to proprietary functions of the political

subdivisions." Whether a function is proprietary or governmental is a mixed question of law and fact.

Under R.C. 2744.01(G)(2)(c), "[t]he establishment, maintenance, and operation of a utility, including,

but not limited to, a public hospital, a public cemetery, or a public electric utility" is proprietary. So is

"the operation of a municipal corporation with respect to functions customarily engaged in by

nongovernmental persons," such as hiring and managing contracted security vendors.

Here, Plaintiff has alleged that the City engaged in proprietary activity by contracting out

security services, an activity that private companies routinely undertake. The management of vendor

access to such contracts, and the decision to empower officers like Butler to influence contract

allocation, is not exclusively governmental in nature. Therefore, the City's negligence in hiring and

supervising Butler in this context is not categorically immune under R.C. 2744.02(A)(1).

24

Moreover, Ohio courts have consistently held that the determination of whether an act falls within one of the R.C. 2744.02(B) exceptions often require a fact-specific inquiry that cannot be resolved at the pleading stage. See *Campana v. City of Green*, 2018-Ohio-1602, ¶ 10 (9th Dist.) (reversing dismissal where immunity could not be determined solely from the face of the complaint); *Doe v. Greenville City Schools*, 2020-Ohio-1232, ¶ 33 (2d Dist.) (rejecting blanket application of immunity to negligent hiring and supervision claims where facts suggested conscious disregard of known misconduct).

Plaintiff alleges that the City was on notice, via internal affairs investigations and complaints, that Butler was manipulating the vendor process and operating in a manner inconsistent with law and policy. Despite this, the City retained him in a position of influence over security vendor contracts. These facts, if proven, demonstrate more than mere negligence. They show a reckless disregard for known risks, which may take the City's conduct outside the scope of protected discretionary judgment. See *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, ¶ 16 (exceptions to immunity may apply where the conduct involves wanton or reckless behavior).

Defendant's reliance on *McConnell v. Dudley*, 2019-Ohio-4740, is misplaced. That case addressed supervision in the context of vehicular liability under R.C. 2744.02(B)(1), not the broad proprietary-function exception under R.C. 2744.02(B)(2), nor did it involve allegations of fraud, collusion, and discriminatory exclusion in public contracting.

Here, Plaintiff's claim is not based on a single incident of misjudgment. It is based on years of intentional tolerance of a known problem. Where a municipality is aware of an employee's misconduct and does nothing to correct it, claims for negligent hiring and supervision may proceed. See *Ziegler v. Mahoning County Sheriff's Dept.*, 2014-Ohio-1500, ¶ 33 (7th Dist.) (rejecting immunity at summary judgment stage where the county was aware of officer's prior misconduct and failed to act).

Because Plaintiff has pled facts that, if true, would fall within a statutory exception to immunity and allege conduct beyond protected discretion, the negligence claim should not be dismissed at the Rule 12 stage.

### L. Plaintiff's demand for punitive damages is not improper at the pleading stage should not be dismissed or stricken.

Defendant argues that a claim for punitive damages is categorically unavailable against the City of Cleveland under both federal and state law and requests dismissal or striking of all punitive damage allegations. This overstates the law and misconstrues Plaintiff's claims. While it is true that punitive damages are not recoverable against municipalities under certain statutes, Plaintiff has not demanded punitive damages from the City as an entity under § 1983 or § 1985. Rather, Plaintiff seeks punitive damages where appropriate against individual actors, including those working outside the scope of official capacity or in conjunction with private entities.

The Supreme Court in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), held that municipalities are immune from punitive damages under § 1983. This principle is well settled. However, the prohibition does not extend to individual municipal employees sued in their individual capacities for conduct committed with willful or malicious intent. See *Smith v. Wade*, 461 U.S. 30, 35 (1983) (punitive damages available against individual defendants under § 1983 for reckless or callous disregard of federally protected rights).

To the extent Defendant argues that all punitive damage claims must be dismissed simply because the City is a municipal entity, the argument misses the mark. Plaintiff has alleged that Detective Michael Butler acted outside the scope of his official duties, used his position for personal gain, and engaged in willful exclusion of Plaintiff from business opportunities. Plaintiff's claim for punitive damages is therefore appropriate as to Butler and any other individuals found to have acted with malice or deliberate indifference. It is premature at the pleading stage to dismiss those claims

categorically. See, *Doe v. Claiborne Cnty.*, 103 F.3d 495, 513 (6th Cir. 1996) (individual defendants may be subject to punitive damages where facts support wanton or reckless conduct).

Moreover, Plaintiff's punitive damages claims are not exclusively tethered to § 1983. To the extent that Plaintiff prevails on non-municipal claims involving conduct by private actors or employees acting outside the scope of their public employment, punitive damages may still be available. See *Craine v. ABM Servs., Inc.*, 2022-Ohio-1731, ¶ 48 (10th Dist.) (punitive damages permitted where conduct was egregious and undertaken with malice or reckless indifference to rights of others).

At this stage, Plaintiff's request for punitive damages cannot be dismissed as a matter of law. It is well established that damages demand need not be limited at the pleading stage, particularly where the theory of recovery includes willful or malicious misconduct. See *Conley v. Gibson*, 355 U.S. 41, 47–48 (1957); *Doe v. Columbia Univ.*, 831 F.3d 46, 62 (2d Cir. 2016) (a demand for punitive damages should not be dismissed unless it is clear that such relief cannot be granted under any set of facts).

For these reasons, the Court should deny Defendant's motion to strike or dismiss Plaintiff's punitive damages demand in its entirety. The issue is not ripe for resolution on the pleadings.

## V.    __CONCLUSION__

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant City of Cleveland's Motion for Judgment on the Pleadings in its entirety. The First Amended Complaint sets forth specific, well-pled factual allegations that support plausible claims for relief under both federal and Ohio law. Plaintiff has alleged actionable conduct carried out by municipal employees and private actors operating in concert, including racial discrimination, civil rights violations, exclusion from public contract processes, and fraud. These allegations are supported by specific facts, names, dates, and patterns of conduct, not conclusions or speculation.

To the extent Defendant raises issues of immunity or statute of limitations, those arguments are either premature or do not apply on the facts pled. Plaintiff has plausibly alleged ongoing harm and continuing discriminatory exclusion. Furthermore, Plaintiff has properly stated claims for relief under Monell, § 1985, Ohio tort law, and equitable doctrines, and has done so in a manner that satisfies both Rule 8 and Rule 9(b). Accordingly, Defendant's Motion should be denied, and this case should proceed on the merits.

Respectfully submitted,

Arleesha Wilson, Esq. (0097351)
Law Office of Arleesha Wilson
600 Superior Avenue. Suite 1300
Cleveland, Ohio 44114
216-278-7543 (office)
833-938-2002 (fax)
justice@attorneyawilson.com

*Attorney for Plaintiff Safe Choice, LLC*

**LOCAL RULE CERTIFICATION**

This case is expected to be assigned to the standard track. This motion conforms to the extended page limitations and requirements set forth in Local Rule 7.1 as modified by the Court on May 2, 2025 and was filed within the time limits mandated by the Rules.

Arleesha Wilson, Esq.
*Attorney for Plaintiff*

28