IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| SAFE CHOICE, LLC, | Case No. 1:24-cv-02033-PAB |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| CITY OF CLEVELAND, | |
| | MEMORANDUM OPINION AND |
| Defendants. | ORDER |

On September 30, 2025, the Court entered an Order directing Plaintiff Safe Choice, LLC to show cause as to why it should not be held in contempt for violating the Court's September 25, 2025 Order. (Doc. No. 24.) On October 2, 2025, Plaintiff filed its Response to Court's Order to Show Cause. (Doc. No. 26.) After reviewing Plaintiff's Response, on October 3, 2025, the Court set a contempt hearing for October 15, 2025 at 10:00 a.m. On October 15, 2025, the Court held the contempt hearing.

As explained in greater detail below, upon review of Plaintiff's Response, and Attorney Wilson's representations at the October 15, 2025 hearing, the Court will not hold Plaintiff, or Attorney Wilson, in contempt for violating the Court's September 25, 2025 Order. Pursuant to Fed. R. Civ. P. 11(c)(3), however, the Court orders Attorney Wilson to show cause why the conduct specifically described below in this Memorandum Opinion and Order is not a violation of Fed. R. Civ. 11(b).

I.  Background

On September 25, 2025, the Court issued an Order regarding certain cases cited in Plaintiff's Brief in Opposition to Defendant City of Cleveland's Motion for Judgment on the Pleadings. (Doc.

Nos. 19, 23.) Therein, the Court identified four cases that it was unable to locate using standard legal research tools:

- "*Marinelli v. Montgomery County*, 24 Ohio App.3d 217, 220 (2d Dist. 1985)"
- "*Carter v. Cleveland*, 83 Ohio App.3d 580, 586 (8th Dist. 1992)"
- "*Alexander v. City of Round Lake*, 854 F.3d 866, 872 (7th Cir. 2017)"
- "*Craine v. ABM Servs., Inc.*, 2022-Ohio-1731, ¶ 48 (10th Dist.)"

As a result, on September 25, 2025, the Court ordered Plaintiff to file with the Court PDF copies of each of the above-cited cases, or file an explanation as to why it was unable to provide the Court with copies of the above-cited cases, by no later than September 29, 2025 at 4:30 p.m. (the "9/25/25 Order"). (Doc No. 23.)

Plaintiff did not comply with the 9/25/25 Order. Instead, on September 29, 2025 at approximately 4:45 p.m., Plaintiff emailed the undersigned's courtroom deputy. (Doc. No. 24-1.) Therein, Plaintiff's counsel represented that "[m]y team and I have been experiencing issues uploading a filing, as it continues to be rejected. In the interim, I wanted to send the filing via email until I can resolve the e-filing problem." (*Id.*) The email included three attachments. The first attachment is entitled "Plaintiff's Response to Court Order Dated September 29, 2025" ("Plaintiff's Response"). (Doc. No. 24-2.) Plaintiff's Response reads in relevant part, "NOW COMES Plaintiff's counsel and hereby submits the following table of authorities along with PDF files of every case cited in its response in opposition." (*Id.*) The remaining two attachments consist of 1395 pages of caselaw cited in Plaintiff's Brief in Opposition (Doc. No. 19). (Doc. Nos. 24-3, 24-4.)

The Court reviewed Plaintiff's email and its attachments. Contrary to Plaintiff's counsel representation to the Court that she was "submit[ing] the following table of authorities with PDF files

2

of **every** case cited in [Plaintiff's] response in opposition," the four cases identified in the 9/25/25 Order were not included in the Table of Authorities. (Doc. No. 24-2.) Also, the Court determined that the four cases identified above were not included in the 1395 pages of caselaw included in two of the attachments. (Doc. Nos. 24-3, 24-4)

Based on this, the Court found that Plaintiff violated the 9/25/25 Order and then on September 30, 2025, the Court issued an Order requiring that Plaintiff show cause no later than October 2, 2025 at 4:30 p.m. as to why it should not be held in contempt for violating the Court's September 25, 2025 Order (the "9/30/25 Order"). (Doc. No. 24.)

On October 2, 2025, Plaintiff filed its Response to Court's Order to Show Cause. (Doc. No. 26.) Therein, Attorney Wilson represented that the four cases "were never intended to be submitted with the final brief" and "were intended to be removed from the final brief." (*Id.*) She further represented that "the version of the brief that was placed on the docket did not reflect the revisions made by Counsel to remove those authorities." (*Id.*) Moreover, Attorney Wilson represented that "[w]hen the cases were uploaded in response [to] the Court order, we believed that was truly representative of what we cited in the brief we intended to file." (*Id.*) In the Response, however, Attorney Wilson did not file the four cases or explain why she could not.

Based upon a review of Plaintiff's Response, on October 3, 2025, the Court set a contempt hearing for October 15, 2025 at 10:00 a.m. (Doc. No. 27.) As part of that Order, the Court also ordered Attorney Wilson to produce the following:

- Three copies of the four cases that the Court was unable to located
- Three copies of the "final" brief; and
- Proof that the "final" brief was draft on or before May 4, 2025.

3

(*Id.*) On October 15, 2025, the Court held the contempt hearing. At the conclusion of the hearing, the Court took the matter under advisement.

II. Analysis

    A. **The Court will not hold Plaintiff, and Attorney Wilson, in contempt**

"Contempt is serious." *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 799 (6th Cir. 2017) (citing *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)). "To reflect its seriousness, courts must exercise the contempt sanction with caution and use '[t]he least possible power adequate to the end proposed.'" *Id.* (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)). The Sixth Circuit has held that "[a] litigant may be held in contempt if . . . by clear and convincing evidence . . . 'he [violated] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (quoting *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)). *See also Gascho*, 875 F.3d at 800.

At the contempt hearing, Attorney Wilson, albeit in a roundabout manner, provided the Court with an explanation as to why she could not produce copies of the four cases identified in the Court's September 25, 2025 Order. In compliance with the Court's October 2, 2025 Order, Attorney Wilson produced three copies of the "final" brief and purported proof that the "final" brief was drafted on or before May 4, 2025. Instead of producing the four cases identified above, however, Attorney Wilson produced copies of three unrelated cases.[1] At the hearing, Attorney Wilson represented that she produced what "she thought was out there on these cases." (Tr. 25:11–14.) Attorney Wilson

---

[1] The Court has reviewed those three cases and finds that those cases are not the same cases identified in the Court's 9/25/25 Order.

4

ultimately conceded that she was unable find to the four cases identified in the 9/25/25 Order. (Tr. 25:25–26:2.) She also was unable to certify to the Court that the four cases exist. (Tr. 25:22–24.)

The Court also questioned Attorney Wilson as to why she produced approximately 1,300 pages of case law in response to the 9/25/25 Order. (Tr. 9:14–19.) Attorney Wilson explained that she "saw two versions of the order," and that the order that she "saw first was the order that comes through to [her] e-mail." (Tr. 9:20–24.) Attorney Wilson further explained that she "was acting off of the abbreviated order, not realizing that there was an entire body that [she] should have seen on that first day." (Tr. 10:8–10.) Attorney Wilson conceded that she did not read the 9/25/25 Order in full until after the court issued the 9/30/25 Order. (Tr. 10:5–13.)

Attorney Wilson represented that based on the docket text of 9/25/25 Order, she "pulled the brief and [she] pulled every single case and [she] attached it to a PDF file, and [she] thought that was in compliance with [the Court's] order." (Tr. 10:2–4.) The Court notes that the docket text should have alerted Attorney Wilson that it did not expect her to produce every case cited in Plaintiff's Opposition. The docket text provides:

> Order: Plaintiff *cites several cases* that the Court has been unable to locate using standard legal research tools in its Brief in Opposition to Defendant City of Cleveland's Motion for Judgment on the Pleadings. (Doc. No. [19].) Plaintiff shall file with the Court PDF copies of *each of the cited cases*, or file an explanation as to why it is unable to provide the Court with copies of the *above-cite[d] cases*, by no later than September 29, 2025 at 4:30 p.m. Judge Pamela A. Barker on 9/25/2025. (D,I)

(emphasis added.) The use of the phrase "several" and "above-cite[d]" should have given Attorney Wilson notice that that the Court was looking for some, but not all, of the cases cited in Plaintiff's Opposition. At a minimum, this should have alerted Attorney Wilson that she was not reading the full 9/25/25 Order.

5

Attorney Wilson's failure to read the full 9/25/25 Order has needlessly delayed this matter, which the Court finds inexcusable. Had Attorney Wilson simply read the 9/25/25 Order, and filed an explanation as ordered, the contempt hearing, and waste of judicial resources, could have been avoided  Despite her belated explanation, the Court, in exercising caution, declines to hold her in contempt or to issue sanctions based solely on her delay. The Court, however, admonishes Attorney Wilson for not reading the 9/25/25 Order in full and for not simply admitting that the four cases do not exist.

### B. Attorney Wilson violated Rule 11

Although the Court is not sanctioning Attorney Wilson for her belated compliance with the 9/25/25 Order, the Court, however, finds that Attorney Wilson violated Rule 11 when she filed the May 4, 2025 Brief in Opposition, and when she submitted the "final" brief to the Court at the contempt hearing. As explained below, Attorney Wilson violated Rule 11 in four separate ways.

#### 1. The interplay of Rule 11 and artificial intelligence software

Before turning to Attorney Wilson's specific Rule 11 violations, the Court first provides a brief overview of the interplay of the use of artificial intelligence ("AI") and Rule 11. Based on Attorney Wilson's representations at the contempt hearing, the Court believes that the use of AI is the cause of Attorney Wilson's Rule 11 violations.[2]

The Court recognizes the benefits of AI for litigants. *Willis v. U.S. Bank, N.A.*, 738 F.Supp.3d 959, 960 (N.D. Tex. 2025) ("the Court is not opposed to the use of AI and recognizes that when done

---

[2] At the contempt hearing, the Court questioned Attorney Wilson as to how the four non-existent cases ended up in her brief. Attorney Wilson represented that she uses a platform call "Casemine," which has an artificial intelligence program called "Amicus," to "find all of the case law that supports the argument." (Tr. 14:5–16, 25:18–20.) According to Casemine's website (www.casemine.com), "AMICUS is a generative artificial intelligence trained on the whole body of law to serve as a highly skillful and reliable legal assistant. AMICUS not only aids in finding the most accurate and precise answers to your legal queries but also serves as a strategy guide. It is continually updated with the latest developments in the law and is engineered to provide authentic sources to validate its responses."

6

right, AI can be incredibly beneficial for attorneys and the public") (cleaned up); *Nixon v. West*, No. 1:25-cv-575, 2025 U.S. Dist. LEXIS 171094, at *12–13 (N.D. Ohio Sept. 3, 2025) ("Artificial intelligence has the potential to help litigants like Plaintiff who do not have access to a lawyer. In this respect, this nascent tool may prove helpful in promoting access to justice"). And there is nothing generally preventing a litigant from using AI software for research assistance or for drafting briefs. *Bunce v. Visual Tech. Innovations, Inc.*, No. 23-1740, 2025 U.S. Dist. LEXIS 36454, at *9 (E.D. Pa. Feb. 27, 2025) ("There is nothing in Rule 11 that specifically prohibits reliance on AI for research assistance. . . .").

"But, along with its potential benefits, using AI involves risk." *Willis*, 738 F.Supp.3d at 960. AI software "do[es] not—and cannot—decide what is true and what is false." *Buckner v. Hilton Glob.*, No. 3:24-cv-375-RGJ, 2025 U.S. Dist. LEXIS 117533, at *15 (W.D. Ky. June 18, 2025). "Indeed, at times, they just make stuff up—a phenomenon some A.I. researchers call hallucinations." *Id.* These "hallucinations" include citing cases that "often have reporter citations that lead to cases with different names, in different courts, and about different subjects." *Sanders v. United States*, 176 Fed. Cl. 163, 169 (Fed. Cl. 2025) (collecting cases). Even worse, AI software has the tendency to cite cases that do not even exist. *Kruglyak v. Home Depot U.S.A., Inc.*, 774 F.Supp.3d 767, 770 (W.D. Va. 2025). And even if the AI software clears these hurdles and provides accurate case citations, AI software has the tendency to mispresent the holdings of the cited cases. *Id.*

While AI hallucinations have become common knowledge within the legal community, attorneys throughout the country—whether intentionally or through ignorance—continue to cite hallucinated cases. *Mid-Am. Apt. Cmtys.*, No. 2:23-cv-2186, 2025 U.S. Dist. LEXIS 177985, at *6 (W.D. Tenn. Sept. 11, 2025) ("[t]he increased use by lawyers and non-lawyers of artificial

intelligence to draft legal documents has resulted in a scourge of fictitious case citations in court documents in recent years"). Attorneys, seemingly, need to be continually reminded that using AI software to craft a brief does not obviate their responsibilities under Rule 11. *Mata v. Avianca, Inc.*, 678 F.Supp.3d 443, 448 (S.D.N.Y. 2023) ("Technological advances are commonplace and there is nothing inherently improper about using a reliable artificial intelligence tool for assistance. But existing rules impose a gatekeeping role on attorneys to ensure the accuracy of their filings").

Put simply, citing hallucinated fake cases is a violation of Rule 11. *See*, *e.g.*, *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025) ("using a fake opinion to support an argument is a violation of Rule 11(b)(2)"); *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 343 (E.D.N.Y. 2025) ("To start with the obvious, an attorney who submits fake cases clearly has not *read* those nonexistent cases, which is a violation of Rule 11 of the Federal Rules of Civil Procedure") (emphasis in original); *Mata*, 678 F. Supp. 3d at 461 ("A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law"). And, as it always has, misrepresenting the holdings of case law violates Rule 11. *Ali v. IT People Corp., Inc.*, No. 2:25-CV-108515, 2025 U.S. Dist. LEXIS 184888, at *5 (E.D. Mich. Sept. 19, 2025) (holding litigant violated Rule 11 when he "admitted that he misrepresented an alleged quotation" in a case and made a false statement about the effect of a Michigan statute); *Pelishek v. City of Sheboygan*, No. 23-CV-1048, 2025 U.S. Dist. LEXIS 183238, at *3, 6–7 (E.D. Wisc. Sept. 18, 2025) (holding counsel violated Rule 11 when, among other things, they "misrepresented what courts have said"); *Pettit v. Allina Health Sys.*, No. 23-cv-2789 (JWB/JFD), 2025 U.S. Dist. LEXIS 16511, at *25 (D. Minn. Jan. 30, 2025) ("Mispresenting the legal

8

significance of a case or the holding in a case is a violation of Rule 11(b)(2)").[3]

### 2. Attorney Wilson violated Rule 11

Under this framework, the Court finds that Attorney Wilson violated Rule 11 in three separate ways. First, the Court finds that Attorney Wilson cited four cases in Plaintiff's Opposition that do not exist. Attorney Wilson did not dispute this at the contempt hearing. (Tr. 25:25–26:2.) This alone constitutes a violation of Rule 11. *See* Fed. R. Civ. P. 11(b)(2)

Second, the Court finds that Attorney Wilson misrepresented the legal significance of seven additional cases in Plaintiff's Opposition:

- Attorney Wilson cited *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516 (6th Cir. 1997) for the proposition that "the Sixth Circuit held that a 'continuing violation' occurs when the plaintiff suffers a 'fresh injury' from ongoing practice within the limitations period." (Doc. No. 19, PageID #212.) The Sixth Circuit never used the phrase "fresh injury" in the *Kuhnle* opinion.

- Attorney Wilson cited *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019) for the proposition that "a repeated, tolerated practice by city employees over time can satisfy the custom element of *Monell* liability." (Doc. No. 19, PageID #218.) This proposition is misleading. The *Jackson* Court analyzed *Monell* liability under the "official policy" and the "failure to train" theories, neither of which were advanced by Attorney Wilson in Plaintiff's Opposition. (Doc. No. 19, PageID #217–218.) Indeed, in Plaintiff's Opposition, Attorney Wilson advanced a "custom of tolerance"

---

[3] And it goes without saying that such conduct is a violation of the Ohio Rules of Professional Conduct. Ohio R. Prof. Cond. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue in a proceeding, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."); Ohio R. Prof. Cond. 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer").

9

theory.

- Attorney Wilson represented that the *Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013) court "found that a municipality's failure to respond to a known pattern of abuse could amount to ratification." (Doc. No. 19, PageID #219.) This is not true. The *Burgess* court held that an "after-the-fact approval of the investigation, which did not itself cause or continue a harm against [the plaintiff], was insufficient to establish the *Monell* claim." *Burgess*, 735 F.3d at 479.

- Attorney Wilson cited *Huffman v. County of Los Angeles*, 147 F.3d 1054 (9th Cir. 1998) for the proposition that "Courts have repeatedly held where the conspiracy involves at least one actor outside the governmental entity, the doctrine does not apply." (Doc. No. 19, PageID #224.) The word "conspiracy" does not appear even once in the *Huffman* opinion.

- Attorney Wilson cited to *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996) for the proposition that "[i]t is premature at the pleading stage to dismiss [punitive damages] claims categorically." (Doc. No. 19, PageID #231.) The word "punitive" appears nowhere in the opinion.

- Attorney Wilson cited to *Conley v. Gibson*, 355 U.S. 41 (1957), a case which has been overruled by *Twombly* and *Iqbal*, and *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016), for the proposition that "[i]t is well established that damages demand (sic) need not be limited at the pleading stage, particularly where the theory of recovery includes willful or malicious misconduct." (Doc. No. 19, PageID #231.) Neither of these cases remotely support such a proposition.

At the contempt hearing, the Court questioned Attorney Wilson about these citations. Attorney Wilson was unable to point the Court to the portions of each respective opinion where she derived the above-quoted propositions that she cited in her Opposition. (Tr. 28:14–32:12.) The Court finds that these misrepresentations violate Rule 11. *See* Fed. R. Civ. P. 11(b)(2)

Third, Attorney Wilson violated Rule 11 again when she submitted the "final" brief to the Court. Although the "final" brief was not filed, it is still subject to Rule 11. *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, *submitting, or later advocating it*—an attorney or unrepresented party certifies . . . ."). At the contempt hearing, the Court asked Attorney Wilson if the same seven cases were cited in the "final" brief. Ms. Wilson represented that "I would have to check, but it's likely they are." (Tr. 32:13–16.) The Court has independently reviewed the "final" brief and finds that the "final" brief contains the same seven misrepresentations that are identified above. Despite this, Attorney Wilson certified at the contempt hearing that the "final" brief complies with Rule 11. (Tr. 26:22–25.)

In sum, the Court finds that Attorney Wilson violated Rule 11 in three distinct ways: (1) by citing fake cases in Plaintiff's Opposition; (2) by misrepresenting the legal significance of cases in Plaintiff's Opposition; and (3) by misrepresenting the legal significance of the same cases in the "final" brief presented to the Court at the contempt hearing.

## V.     Conclusion

Although Attorney Wilson's conduct is inexcusable, the Court declines to hold Plaintiff and Attorney Wilson in contempt. The Court, however, intends to issues sanctions based on Attorney Wilson's violations of Rule 11. Pursuant to Fed. R. Civ. P. 11(c)(3), Attorney Wilson is ordered to show cause no later than seven days from the date of this Memorandum Opinion and Order as to why the above-described conduct is not a violation of Rule 11(b) and why she should not be sanctioned for this conduct. No extensions shall be granted unless a motion is filed that complies with Fed. R. Civ. P. 6(b).

**IT IS SO ORDERED**.

                                                           *s/Pamela A. Barker*
                                                           PAMELA A. BARKER
Date:  October 17, 2025                          U. S. DISTRICT JUDGE