## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

SAFE CHOICE, LLC,                                    **Case No. 1:24-cv-02033-PAB**

        **Plaintiff,**

        **-vs-**

                         **JUDGE PAMELA A. BARKER**

CITY OF CLEVELAND,

        **Defendant.**                          **MEMORANDUM OPINION & ORDER**

Currently pending before the Court is Defendant City of Cleveland's (the "City") Motion for Judgment on the Pleadings ("the City's Motion"). (Doc. No. 18.) Plaintiff Safe Choice, LLC ("Plaintiff") filed a Brief in Opposition to the City's Motion on May 4, 2025, to which the City replied on May 16, 2025. (Doc. Nos. 19, 22.) For the following reasons, the City's Motion is GRANTED in part and DENIED in part.

## I.   Factual Allegations

The Amended Complaint alleges the following facts. Plaintiff is an Ohio limited liability company that "offers a wide range of security services." (Doc. No. 13 at ¶¶ 1, 7.) Plaintiff alleges that it should "be listed as a vendor for the City of Cleveland as maintained by its Special Events Coordinator out of the City of Cleveland's Police Department." (*Id.* at ¶ 8.) Plaintiff claims, however, that the City's "agents and employees have systematically excluded from (sic) Plaintiff from larger, more lucrative projects since 2018." (*Id.* at ¶ 8.)

Specifically, Plaintiff alleges that "in or around March 2018" Detective Todd Clark of the Cleveland Police Department contacted Plaintiff "regarding how security business was being manipulated by certain officers within the department." (*Id.* at ¶ 10.) Plaintiff alleges that it "learned

that [the City] maintained two versions of a security services vendor list: one that included Plaintiff and another that excluded Plaintiff as a security service vendor." (*Id.* at ¶ 11.)  In addition, Plaintiff alleges that its "name was removed from the website that houses the same list." (*Id.* at ¶ 12.)  Plaintiff further alleges that "[s]everal competing bidders were directly involved in exchanging unreported payouts with [the City's] agents and/or employees." (*Id.* at ¶ 16.)

Plaintiff asserts that the City's use of the two different lists "shows that [the City] blatantly steered business away from Plaintiff" and "toward favored companies," which excluded Plaintiff and caused Plaintiff direct harm.  (*Id.* at ¶¶ 13–14.)  This harm allegedly included Plaintiff being "denied opportunities for contracts, including construction projects, NFL events, movies, and parades." (*Id.* at ¶ 15.)  And Plaintiff's "professional colleagues" contacted Plaintiff "several times throughout the years . . . who specifically [sought] to hire Plaintiff but could not due to Plaintiff being omitted from the list." (*Id.* at ¶ 17.)

Plaintiff alleges that "[t]he [City] learned of this information via its own Department of Internal Affairs and allowed the action to continue." (*Id.* at ¶ 19.)  According to Plaintiff, the City, "learned that its employee, Michael Butler, was engaging in unlawful actions and taking kickbacks from Willo Security, and LEMS, and Tenable Security companies."[1]  (*Id.* at ¶ 20.)  Mr. Butler allegedly "purport[ed] to Plaintiff that it was listed as an eligible vendor on the City's official records" when, in fact, it was not.  (*Id.* at ¶ 40.)  The City's actions, Plaintiff claims, "have been ongoing since" 2018.  (*Id.* at ¶ 41; *see also id.* at ¶ 45 (alleging the City "steer[ed] business to other favored companies beginning in 2018 and has been ongoing since").)

---

[1] According to Plaintiff, Willo Security, LEMS, and Tenable Security are "Michael Butler's associated private companies." (*Id.* at ¶ 36.)

## II.     Procedural History

On October 21, 2024, Plaintiff filed a Complaint against the City of Cleveland in the Cuyahoga County Court of Common Pleas.  (Doc. No. 1-1.)  On November 21, 2024, the City removed the instant action to this Court. (Doc. No. 1.)  On December 26, 2024, the City filed its Answer to the Complaint.  (Doc. No. 5.)

On January 31, 2025, the City filed a Motion for Judgment on the Pleadings.  (Doc. No. 10.) In response, Plaintiff sought, and obtained, leave to file an Amended Complaint.  (Doc. No. 11, 13.) Therein, Plaintiff again names the City as the sole Defendant and alleges the following claims: (i) Declaratory Judgment (Count One); (ii) Equal Protection Under the Law (Count Two); (iii) Conspiracy to Interfere with Civil Rights (Count Three); (iv) Fraudulent Misrepresentation and Concealment (Count Four); (v) Tortious Interference with Business Relations (Count Five); (vi) Civil Conspiracy (Count Six); and (vii) Negligent Supervision (not labeled as a separate count).

On March 14, 2025, the City filed its Answer to the Amended Complaint.  (Doc. No. 15.)  On April 3, 2025, the City's Motion was filed.  (Doc. No. 18.)  Plaintiff filed its Brief in Opposition on May 4, 2025, to which the City replied on May 16, 2025.  (Doc. Nos. 19, 22.)[2]  Accordingly, the City's Motion is ripe for review.[3]

---

[2] The City filed its Reply on May 16, 2025, but did not date the certificate of service.  (Doc. No. 21, PageID #236.)  That same day, the City filed a corrected Reply that included a dated certificate of service.  (Doc. No. 22.)  Accordingly, the Court considers the second Reply (Doc. No. 22) as the operative Reply.

[3] In several Orders issued in September and October 2025, the Court raised concerns regarding Plaintiff's counsel citation to non-existent authority.  On October 15, 2025, the Court held a Contempt Hearing regarding her failure to comply with the Court's orders on this issue.  Contemporaneously with this Memorandum Opinion and Order, the Court is issuing a separate Memorandum Opinion and Order concerning counsel's citation to the non-existent authority and her misrepresentation of several other authorities.

### III.     Standard of Review

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level— "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context

4

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, the examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV. Analysis

### A. Plaintiff's claims are not barred by the applicable statute of limitations

In its Motion, the City argues that all of Plaintiff's claims are governed by a two-year statute of limitations. (Doc. No. 18-1, PageID #180.) The City maintains that Plaintiff's claims are time-barred because the "gravamen of the Amended Complaint" concerns alleged conduct that "Plaintiff admittedly found out about . . . seven years ago." (*Id.* at PageID #181.) The City further asserts that "Plaintiff's Amended Complaint does not identify any specific events or contracts that were awarded to some other security services vendor within the two years prior to October 21, 2024 [i.e. the date Plaintiff filed its original Complaint]." (*Id.*)

In its Opposition, Plaintiff agrees with the City that the applicable statute of limitations is two-years. (Doc. No. 19, PageID #212.) Citing *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516 (6th

5

Cir. 1997),[4] Plaintiff argues that "courts recognize an exception to the two-year statute of limitations where the alleged harm is part of a continuing violation." (*Id.*)  Plaintiff claims that it meets this standard because: (1) "[t]he harm started in 2018 when [the City's] bad actors were outed by its own Internal Affairs investigation;" (2) "[the City] promised reform and that the 'mistake' would be rectified;"[5] and (3) the harm continued because Plaintiff was "contacted several times throughout the years by its professional colleagues, who specifically [sought] to hire Plaintiff but could not due to Plaintiff being omitted from the list." (*Id.*)[6]  Plaintiff also argues that its use of the phrase "since 2018" in the Complaint "inherently invokes a pattern of misconduct, not a one time event." (*Id.* at PageID #213.)  Plaintiff also asserts that "the statute of limitations period is also tolled, based on equitable estoppel, as a false representation or concealment exists herein." (*Id.*)

In its Reply, the City argues that "Plaintiff misstates and misapplied the ruling in *Kuhnle Bros.*" (Doc. No. 22-1, PageID #277.)  It argues that "the Sixth Circuit in *Kuhnle* still applied the two-year statute of limitations period (there was no functional 'exception' akin to tolling) and the instant case does not involve the continuous application of a written law." (*Id.* at PageID #278.)  The City further asserts that "even if the court were to apply the continuing violation doctrine, Plaintiff's Amended Complaint does not allege any specific events or actions (including lost contracts) that

---

[4] Plaintiff also cites *Kuhnle* for the proposition that "the Sixth Circuit held that a 'continuing violation' occurs when the plaintiff suffers a 'fresh injury' from ongoing practice within the limitations period." (Doc. No. 19, PageID #212.)  The Sixth Circuit never used the phrase "fresh injury" in the *Kuhnle* opinion.  As will be discussed throughout this opinion, Plaintiff cites cases that do not even remotely stand for the proposition cited, and at times, Plaintiff cites cases that do not even exist.

[5] The Court will disregard this statement as it is not contained in the Amended Complaint and this Court's review is solely confined to the pleadings.

[6] Plaintiff also argues that it "even learned just last week a contract that has been awarded to it for years without fail was re-bid when it was the only bidder." (Doc. No. 19, PageID #212–23.)  The Court will also disregard this statement as it is likewise not pled in the Amended Complaint.

could be considered tortious conduct by the City within the two years prior to filing the original Complaint." (*Id.* at PageID #279.)

"Although the statute of limitations is an affirmative defense, a Complaint can be dismissed for failure to state a claim if the allegations of the Complaint demonstrate that the claim would be barred by the applicable statute of limitations." *Hammock v. Rogers*, No. 1:17-cv-1939, 2018 U.S. Dist. LEXIS 222835, at *9 (N.D. Ohio Dec. 17, 2018) (quoting *Robinson v. City of Euclid*, No. 1:10CV1824, 2010 U.S. Dist. LEXIS 103442, at *3 (N.D. Ohio Sept. 30, 2010)). Thus, while "a defendant bears the burden of proving a statute-of-limitations defense" a plaintiff "can plead [itself] out of court on statute-of-limitations grounds if the complaint alleges facts showing that [it] did not sue in time." *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)).

Plaintiff's Amended Complaint alleges various federal and state law claims. As explained below, the Court finds that, construing the allegations in the Amended Complaint in a light most favorable to Plaintiff, Plaintiff's claims are not barred by the applicable statutes of limitations. While Plaintiff alleges conduct occurring as far back as 2018, the Court finds that Plaintiff has also pled conduct by the City that occurred within the applicable limitations period. The Court will address each claim in turn below.

### 1.    Plaintiff's Declaratory Judgment claim (Count One) is not time barred

In Count One, Plaintiff asserts a declaratory judgment claim. The statute of limitations for a declaratory judgment claim is the same as "the statute of limitations applicable to the claims underlying [the plaintiff's] request for declaratory relief." *Kondaur Capital Corp. v. Smith*, 802 F. App'x 938, 948 (6th Cir. 2020). Thus, if the underlying claim is time-barred, the declaratory

judgment claim would also be time-barred. *Nader v. N.Y. Life Ins. Co.*, No.1:23-cv-2037, 2025 U.S. Dist. LEXIS 190607, at *13 (N.D. Ohio Sept. 25, 2025) ("Because the applicable statute of limitations and the contractual limitations period bar Plaintiff's claim for breach of contract, they also bar his claims for a declaratory judgment"). As explained *infra*, here, the Court finds that none of Plaintiff's claims, as pled, are time-barred. Thus, Plaintiff's declaratory judgment claim, as pled, likewise is not time-barred.

## 2. Plaintiff's § 1983 claim (Count Two) is not time barred

In Count Two, Plaintiff asserts a claim for "Equal Protection Under the Law." (Doc. No. 13 at PageID# 131.) The Court construes this claim as being brought under 42 U.S.C. § 1983. (*Id.* at ¶ 3 ("This is a civil action brought against Defendant pursuant to . . . Title 42 U.S.C. § 1983").) The parties agree that § 1983 claims brought in Ohio are subject to a two-year statute of limitations. *See*, *e.g.*, *Beaver St. Invs., LLC v. Summit Cnty.*, 65 F.4th 822, 826 (6th Cir. 2023). Claims under § 1983 accrue "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Mahvi v. Geauga Cnty.*, No. 1:24-CV-1098, 2025 U.S. Dist. LEXIS 101682, at *6 (N.D. Ohio May 29, 2025) (quoting *Beaver*, 65 F.4th at 826).

Under Sixth Circuit law, "[a] continuing violation can delay accrual of [a plaintiff's] causes of action" under § 1983. *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1034 (6th Cir. 2025) (citing *Eidson v. Tenn. Dep't of Children Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)). The Sixth Circuit has identified two categories of "continuing violations":

> The "test for determining whether a continuing violation exists" under the first category has three components: "wrongful conduct" that "continue[d] after the precipitating event that began the pattern"; "injury to the plaintiff" that "continue[d] to accrue after that event"; and such "further injury . . . hav[ing] been avoidable if the defendants had at any time ceased their wrongful conduct." *Eidson*, 510 F.3d at 635 (internal quotation marks omitted). "[C]ontinual ill effects from an original

violation" do not meet this standard. *Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999) (quotation marks omitted). Rather, defendants must engage in "continual unlawful acts." *Id.* (quotation marks omitted). Similarly, "[p]assive inaction . . . does not support a continuing violation theory." *Id.*

"The second category of continuing violations exists when the defendant has committed several distinct acts of wrongdoing, and the cumulative effect of these acts amounted to a constitutional violation. But if the defendant's separate acts of wrongdoing are individually actionable, the continuing-violation doctrine does not apply." *Howell* [*v. Cox*, 785 F. App'x 480, 485 (6th Cir. 2018)] (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-17, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Sharpe v. Cureton*, 319 F.3d 259, 266-67 (6th Cir. 2003); *Bowerman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local No. 12*, 646 F.3d 360, 366-67 (6th Cir. 2011)).

*Brown*, 135 F.4th at 1035.

The parties' briefing focuses primarily on the applicability of the continuing violation doctrine. At this stage of the case, however, the Court need not decide whether the continuing violation doctrine applies to Plaintiff's § 1983 claim. The Court recognizes that Plaintiff pled that it was aware of conduct forming its § 1983 claim in March 2018. (Doc. No. 13, ¶ 10.) The Court finds, however, that the March 2018 conduct is not the sole basis for Plaintiff's § 1983 claim. Plaintiff alleges that "*since* 2018" the City "systematically excluded from [*sic*] Plaintiff from larger, more lucrative projects." (*Id.* at ¶ 9 (emphasis added).) And, with respect to its § 1983 claim, Plaintiff alleges that "[a]s a result of [the City's] discriminatory practices, Plaintiff was excluded from lucrative *contracts* causing significant financial losses." (*Id.* at ¶ 32 (emphasis added).) By using the plural "contract**s**," Plaintiff alleges more than one event giving rise to its § 1983 claim. Thus, and when construing the Amended Complaint as a whole, the Court finds that Plaintiff has sufficiently pled that the City's allegedly improper conduct has been ongoing "since 2018." Accordingly, the allegations in the Amended Complaint suggest that at least some of the conduct forming Plaintiff's §

1983 claim may have occurred during the two-year limitations period.  Thus, Plaintiff's § 1983 claim, as pled, is not time-barred.

### 3.      Plaintiff's § 1985 claim (Count Three) is not time barred

The parties agree that Plaintiff's § 1985 claim is also governed by a two-year statute of limitations.  *See*, *e.g.*, *Dotson v. Lane*, 360 F. App'x 617, 620, n.2 (6th Cir. 2010).  As with Plaintiff's § 1983 claim, its § 1985 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Mahvi*, 2025 U.S. Dist. LEXIS 101682 at *6 (quoting *Beaver*, 65 F.4th at 826).

Here, the Court finds the Amended Complaint does not specify when Plaintiff's § 1985 claim accrued.  Plaintiff alleges:

> [The City's] employee by the name of Detective Michael Butler, acted in concert with Detective Michael Butler's associated private companies, namely, Willo Security, and LEMS, and Tenable Security, for purpose of depriving, either directly or indirectly the Plaintiff of Equal Protect (sic) of the laws, or of equal privileges or immunities under the laws, or for the purposes of preventing or hindering Plaintiff from pursuing its livelihood under the equal protection of the laws.

(Doc. No. 13 at ¶ 36.)  There are no allegations providing when this alleged conspiracy took place. However, this allegation is consistent with Plaintiff's allegation that the City's "agents and employees have systematically excluded [] Plaintiff from larger, more lucrative projects since 2018."  (*Id.* at ¶ 9.)  Thus, the Court finds that Plaintiff has sufficiently pled that the alleged § 1985 conspiracy may have occurred within the two-year limitations period.  Accordingly, the Court finds that Plaintiff's § 1985 claim, as pled, is not barred by the statute of limitations.

In sum, the Court finds that Plaintiff's federal claims, as pled, are not time-barred.[7]  The Court next turns to the City's arguments that Plaintiff's allegations set forth in the Amended Complaint do not state claims for relief and/or the claims asserted otherwise fail.[8]

**B.     Plaintiff's federal claims fail to state a plausible claim**

The Court next assesses whether Plaintiff's federal claims (Counts Two and Three of the Amended Complaint) state plausible claims for relief.

**1.     Plaintiff's Equal Protection claim fails to state a plausible *Monell* claim**

While Count Two of the Amended Complaint is labeled "Equal Protection Under the Law," the Court construes this claim as one brought under 42 U.S.C. § 1983.  Plaintiff argues in its Opposition that its Equal Protection claim is brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978) and its progeny.  (Doc. No. 19, PageID #216–17.)

As the parties agree, a municipality is not liable for injuries inflicted solely by its employees or agents under § 1983.  *See*, *e.g.*, *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Baynes v. Cleland*, 799 F.3d 600, 622 (6th Cir. 2015).  Rather, "[m]unicipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of plaintiff's constitutional rights."  *Heyerman v. Cty. of Calhoun*, 680 F.3d 642 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010)).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and

---

[7] The Court's decision is based solely upon its review of the Amended Complaint and is for purposes of this opinion only.

[8] As explained below *infra*, the Court is declining to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the Court declines to address the parties' arguments regarding whether Plaintiff's state law claims are timely.

practices so persistent and widespread as to practically have the force of law." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Sixth Circuit law recognizes four theories of *Monell* liability: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence [to] federal rights violations." *See*, *e.g.*, *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Here, the Plaintiff argues that it has adequately alleged two of the above four recognized theories (i.e., the "ratification" and "custom of tolerance" theories). (Doc. No. 19, PageID #217–220.) The Court will address the parties' arguments regarding each theory in turn below.

### i.       Plaintiff has not pled the existence of an illegal official policy or legislative enactment

Before turning to Plaintiff's arguments regarding its ratification and custom of tolerance theories, the Court will address the City's argument that Plaintiff has failed to adequately allege a claim under the "official policy" theory of *Monell* liablity.  Plaintiff's Brief in Opposition is unclear but does not appear to assert that the Amended Complaint alleges a *Monell* claim based on the existence of an alleged illegal "official policy."   Specifically, in two separate sections of its Opposition, Plaintiff argues that it has alleged the existence of an illegal municipal custom and "custom of tolerance and deliberate indifference" that violated its rights. (Doc. No. 19 at PageID#s 218, 219-220.)  In neither of these sections does Plaintiff expressly argue that it has alleged a *Monell* claim based on the alleged existence of an illegal official policy.   Confusingly, however, in the first "custom" section of its Opposition (*Id*. at PageID #218), Plaintiff relies exclusively on a case

involving the "official policy" theory of *Monell* liability. Upon careful review, the Court finds that Plaintiff has not sufficiently argued that the Amended Complaint asserts a *Monell* claim based on the existence of an illegal official policy and, therefore, has waived any opposition relating to such a claim. Even assuming *arguendo* that Plaintiff had argued that it pled a claim under an "official policy" theory, however, the Court finds that Plaintiff has failed to plausibly allege that theory of liability for the reasons set forth below.

To state a claim under the "official policy" theory of liability, "a plaintiff must '(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Osberry v. Slusher*, 750 F. App'x 385, 398 (6th Cir. 2018) (quoting *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)).

Here, the Court finds that Plaintiff has not stated a *Monell* claim under the "official policy" theory. While Plaintiff alleges that "Defendant discriminated against Plaintiff in order to further its illegal policies and customs," Plaintiff does not allege what those "policies" are in the Amended Complaint. Indeed, Plaintiff does not even identify what those "policies" are in its Opposition.[9] Under similar circumstances, courts have dismissed *Monell* claims under Rule 12. *See Gonzalez v. Kovacs*, 687 F.App'x 466, 470 (6th Cir. 2017) (affirming dismissal of *Monell* claim when the plaintiff

---

[9] Plaintiff's citation to *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019) does not alter the Court's conclusion. In *Jackson*, the Sixth Circuit held that a jury could find that the City of Cleveland "had a policy of permitting *Brady* violations" pursuant to a Cleveland Division of Police "General Police Order" and certain rules in Cleveland's police manual. *Id.* at 834. In other words, the *Jackson* court found that the "General Police Order" and the police manual rules could constitute an illegal official policy. Unlike *Jackson*, Plaintiff has not alleged any specific "order" or "rule" that it contends is illegal. While Plaintiff asserts that the City's use of "two vendor lists" is illegal, Plaintiff has not alleged that the use of "two vendor lists" is an official City policy, or that the use of "two vendor lists" was derived from some order, rule, or legislative enactment. Indeed, Plaintiff does not even allege that the use of "two vendor lists" is an "official policy or legislative enactment" of the City.

The Court also notes that this is another example of Plaintiff misrepresenting the holdings of cases cited in its Opposition. Plaintiff cites *Jackson* for the proposition that "a repeated, tolerated practice by city employees over time can satisfy the custom element of *Monell* liability." (Doc. No. 19, PageID #218.) The Court in *Jackson* did not apply this standard to an "official policy" *Monell* claim.

13

did not allege "a single fact that suggests, plausibly or otherwise that [plaintiff's] misconduct was the result of a custom, policy, or practice of Lorain County"); *Crandall v. Newaygo Cnty.*, No. 1:22 cv-1193, 2023 U.S. LEXIS 104374, at *12 (W.D. Mich. June 15, 2023) (dismissing *Monell* claim, when the plaintiff did not allege "either an officially enumerated policy or legislative enactment of" the defendant). Accordingly, the Court finds that Plaintiff has not pled a *Monell* claim under the "official policy" theory.

### ii. Plaintiff has not pled that an official with final decision-making authority ratified illegal actions

The City argues in its Motion that "Plaintiff has not named a final decision-maker who affirmatively ratified any demonstrably illegal act by any City employee at any time, let alone prior to Plaintiff's alleged harm." (Doc. No. 18-1, PageID #188.) In its Opposition, Plaintiff asserts "that [Detective] Butler's manipulation of the vendor list was known to the City through an internal affairs investigation and despite this knowledge, the City continued to allow contracts to be steered through the same unlawful process." (Doc. No. 19, PageID #219.) Plaintiff further asserts that "[t]he City's continued use of the exclusionary list and failure to discipline or remove [Detective] Butler support an inference that [the City] ratified the conduct." (*Id.*)[10]

In its Reply, the City argues that the Plaintiff has not alleged (1) conduct "establish[ing] a clear finding of illegal conduct or constitutional violation;" (2) "any final decision-maker who affirmatively approved of any demonstrably illegal act by [Detective] Butler;" and (3) "any other instances where similar conduct occurred, [where] the City investigated (or alternatively, outright

---

[10] Plaintiff argues that "[t]hese allegations meet the standard for municipal ratification." (Doc No. 19, PageID #219.) Plaintiff makes this argument by pointing to *Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013). Plaintiff represents that the *Burgess* court "found that a municipality's failure to respond to a known pattern of abuse could amount to ratification." (*Id.*) Not so. In fact, the *Burgess* court held that an "after-the-fact approval of the investigation, which did not itself cause or continue a harm against [the plaintiff], was insufficient to establish the *Monell* claim." *Id.* at 479.

failed to investigate), and [where] a final decision-maker affirmatively approved (i.e. ratified) the illegal conduct."  (Doc. No. 22-1, PageID #284.)

Under the "ratification" theory, a plaintiff must sufficiently allege that "the ratification was carried out by an official with final decision-making authority."  *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016) (citing *D'Ambrosio*, 747 F.3d at 386 ("To properly allege a municipal liability claim, a plaintiff must adequately allege . . . that an official with final decision making authority ratified illegal actions").  "Ratification may take the form of a failure to investigate, provided there have been 'multiple earlier inadequate investigations [that] concern comparable claims.'"  *Mosier v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024) (quoting *Pineda v. Hamilton County*, 977 F.3d 483, 495 (6th Cir. 2020)).

Here, the Amended Complaint contains no allegations supporting a ratification theory.  First, Plaintiff does not allege that a specific decision-maker ratified any conduct undertaken by a City employee.  *See Jocke v. City of Medina*, No. 22-3954, 2023 U.S. App. LEXIS 21029, at *15 (6th Cir. 2023) ("Nowhere in the complaint do Plaintiffs identify what those ordinances are, nor do they identify an individual with final decision-making authority who ratified the decision. Such conclusory statements are insufficient to establish a *Monell* claim.");  *Red Cone 12 LLC v. City of Columbus*, 758 F. App'x 508, 516 (6th Cir. 2019) (affirming dismissal of *Monell* when the plaintiff did not allege that a city employee "served as an official municipal policymaker under the circumstances");  *Campbell v. Hamilton Cnty.*, No. 1:22cv315, 2023 U.S. Dist. LEXIS 172829, at *20 (S.D. Ohio Sept. 27, 2023) ("Plaintiff's claim falls short because he has not identified an official with final decision-making authority in his Complaint");  *Lyons v. Franklin County Ky.*, No. 3:19-cv-00064-GFVT-EBA, 2020 U.S. Dist. LEXIS 45070, at *9 (E.D. Ky. Mar. 16, 2020) ("Under the ratification theory,

Plaintiff's claim fails because it does not identify with any specificity a decision made by a decision-maker with ultimate authority").

Second, Plaintiff did not allege that the City failed to investigate comparable claims or even that there were such claims.  The allegations in the Complaint only pertain to conduct between Plaintiff and the City.  Accordingly, Plaintiff's *Monell* claim under this theory fails.  *See Mosier*, 90 F.4th at 549; *see also Lee v. Wellpath Corp.*, No. 2:24-cv-39, 2025 U.S. Dist. LEXIS 143536, at *7, n.3 (W.D. Mich. July 28, 2025) (dismissing *Monell* claim when the plaintiff failed to allege that there were "multiple earlier inadequate investigations that concern comparable claims").[11]

### iii.   Plaintiff has not pled the existence of a custom of tolerance or acquiescence to federal rights violations

In its Motion, the City argues that Plaintiff fails to allege any of the essential elements of a "custom of tolerance" claim.  (Doc. No. 18-1, PageID #191.)  Further, the City asserts that Plaintiff alleges that "the 'custom' of the City's police department is presumably to treat other persons and businesses fairly and lawfully, but that its treatment was contrary to that 'custom.'"  (*Id.*)  The City maintains that Plaintiff alleges "a 'custom' specific to Plaintiff, which does not advance a custom theory of *Monell* liability, but instead fairly contradict it."  (*Id.*)

In its Opposition, Plaintiff asserts that it has "alleged all four elements" of a "custom of tolerance" claim.  (Doc. No. 19, PageID #220.)  In making this argument, Plaintiff asserts that it pled (1) "[t]he dual list vendor system has operated since at least 2018;" (2) "[t]he City had actual notice

---

[11] The Court is not persuaded by Plaintiff's citation to *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020).  Plaintiff argues that the *Wright* "court recognized that ratification can be shown when officials approve or ignore known misconduct, especially where such conduct causes repeated harm."  (Doc. No 19, PageID #219.)  In *Wright*, the plaintiff pointed to a police chief's "lack of investigation and discipline in other high-profile use-of-force cases involving Euclid police officers" and a police sergeant's testimony that he "had never heard of a use of force incident by a Euclid officer that seemed inappropriate to him."  *Id.* at 778.  *Wright* is inapplicable here because Plaintiff does not allege "other" incidents like the plaintiff in *Wright* did.

through a formal internal affairs investigation;" (3) "[d]espite knowing that a City employee was manipulating the contracting process and accepting kickbacks, the City permitted him to continue in his role and took no remedial steps;" and (4) "[t]his practice continued to exclude Plaintiff from City contracts and functions as a de facto policy of economic exclusion based on race." (*Id.*)

In its Reply, the City argues that "the Amended Complaint has identified zero similar events or instances aside from the subject allegations, and no prior investigations." (Doc. No. 22-1, PageID #286.)  The City further argues that "[t]he Amended Complaint does not adequately plead a pattern, notice to the City, or deliberate indifference, let alone causation." (*Id.* at PageID #287.)  The City concludes, "[w]ith no factual allegations showing a formal policy or any prior incidents to support the City of Cleveland's alleged adoption of such informal practice or custom, a *Monell* municipal-liability claim accordingly fails." (*Id.*)

Under the "custom of tolerance" theory, a plaintiff must allege  (1) "'a clear and persistent' pattern of unconstitutional conduct by municipal employees;" (2) "the municipality's 'notice or constructive notice' of the unconstitutional conduct;" (3) "the municipality's 'tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction;'" and (4) "that the policy of inaction was the 'moving force' of the constitutional deprivation, such that the plaintiff's constitutional injury was directly caused by the conduct of the municipality rather than simply by the conduct of the municipal employee.'" *D'Ambrosio*, 747 F.3d at 387-88 (quoting *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996)). As with a ratification claim, "a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims." *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013)

17

(citing *Thomas v. City of Chattanooga*, 398 F3d 426, 433 (6th Cir. 2005); *Shelby Cnty. Sheriff*, 891 F.3d 1241, 1248 (6th Cir. 1989)).

Here, Plaintiff arguably pled the first two elements.  Plaintiff alleges (1) that the City "systematically excluded [] Plaintiff from larger, more lucrative projects since 2018; and (2) that the City "learned of this information via its own Department of Internal Affairs and allowed the action to continue."  (Doc. No. 13 at ¶¶ 9, 20.)  The Court finds, however, that Plaintiff did not allege the third element.  While Plaintiff alleges that the City, "allowed the action to continue," it does not allege that this failure to act amounts to deliberate indifference that amounts to an "official policy of inaction."  Indeed, the phrase "deliberate indifference" appears nowhere in the Amended Complaint.  Thus, without allegations supporting this essential element, Plaintiff's *Monell* claim under a "custom of tolerance" theory fails. *See D'Ambrosio*, 747 F.3d at 387–88; *Harcrow v. Harcrow*, No. 21-5943, 2022 U.S. App LEXIS 26214, at *13 (6th Cir. Sept. 19, 2022) (affirming dismissal of *Monell* claim when the plaintiff "simply asserted that City policy officers acted under identified 'lax and permissive policies and customs of the police force of the City'").

Further, Plaintiff's "custom of tolerance" theory fails for a separate reason.  Plaintiff argues that it is "not required to identify every instance of similar discrimination, nor to submit evidence of comparable harms to vendors."  (Doc. No. 19, PageID #220.)  The Sixth Circuit, however, requires a § 1983 plaintiff to plead the existence of a "pattern of inadequately investigating similar claims" to sustain a "custom of tolerance" theory.  *Burgess*, 735 F.3d at 479; *Red Cone 12 LLC v. City of Columbus*, 758 F. App'x 508, 516 (6th Cir. 2019) (affirming dismissal of *Monell* claim when the plaintiff did not allege facts "supporting that the City has ever filed a similarly inappropriate nuisance action against another business"); *Heath v. Cole*, No. 24-cv-10568, 2025 U.S. Dist. LEXIS 8743, at

*10 (E.D. Mich. Jan. 16, 2025) (dismissing *Monell* claim under the "custom of tolerance" theory when the "Plaintiff's complaint [did] not identify any prior similar constitutional violations"); *Koren v. Neil*, No. 1:21-cv-9, 2022 U.S. Dist. LEXIS 60605, at *41 (S.D. Ohio Mar. 31, 2022) (dismissing *Monell* claim under the "custom of tolerance" theory when the plaintiff failed "to adequately allege 'a pattern of inadequately investigating' claims similar to his own").  Because Plaintiff has not pled that there is a "pattern of inadequately investigating similar claims," its *Monell* claim fails.  *Crandall*, 2023 U.S. Dist. LEXIS 104374 at *13 ("Although it is possible to allege an informal or unpublished policy, Crandall's threadbare assertions do not suffice. He relies solely on the facts of his own case; he does not plausibly allege a pattern of due process violations occurring in other cases that would suggest the existence of a policy or custom").

In sum, the Court finds that the Amended Complaint fails to state a *Monell* claim under any of the four recognized theories.  The Court dismisses Count Two of the Amended Complaint.

### C.  Plaintiff has not pled a plausible § 1985 claim

The Court next turns to Plaintiff's § 1985 claim.  In the City's Motion, it argues that "[i]n order to maintain an action [under § 1985] . . . a plaintiff must plead specific facts that establish some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  (Doc No. 18-1, PageID #194.)  Under this standard, the City argues that "Plaintiff does not adequately allege that the City acted with discriminatory animus based on a constitutionally protected classification."  (*Id.* at PageID #197.)

In its Opposition, Plaintiff argues that the City's argument fails for two reasons.  First, "Plaintiff expressly alleges racial discrimination against a certified minority-owned business in the allocation of public contracting opportunities."  (Doc. No. 19, PageID #222.)  Second, "Plaintiff

alleges facts demonstrating a coordinated scheme among a City official and private actors to exclude Plaintiff in the basis of race, which satisfies the standard under § 1985(3)." (*Id.*)[12]

In its Reply, the City asserts that the Amended Complaint lacks any allegations of "overt acts which could support the required inference of racial animus." (Doc. No. 22-1, PageID # 291.) The City further asserts that "the Amended Complaint does not allege that the City, any of its employees, or any alleged private co-conspirators knew Plaintiff was a minority-owned business." (*Id.* at PageID #292.)

"Section 1985(3) prohibits a conspiracy 'for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws.'" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting 42 U.S.C. § 1985(3)). The Supreme Court has interpreted § 1985(3) "to require 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Sixth Circuit law requires a § 1985(3) "be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Arson v. Keller*, 784 F. App'x 900, 914 (6th Cir. 2019) (affirming dismissal of § 1985(3) when the plaintiff "offered no specificity to any alleged conspiracy, common discriminatory animus or a particular plan between Defendants").

---

[12] Plaintiff also argues that the allegations in the Amended Complaint, "are more than sufficient to infer the required animus" by citing to *Alexander v. City of Round Lake*, 854 F.3d 866, 872 (7th Cir. 2017). Based on the Court's own research, this case does not exist.

Plaintiff's allegations supporting its § 1985 claim are sparse. Specifically, Plaintiff's § 1985 claim (Count Three) alleges as follows:

> 36. Defendant's employee by the name of Detective Michael Butler, acted in concert with Detective Michael Butler's associated private companies, namely, Willo Security, and LEMS, and Tenable Security, for purpose of depriving, either directly or indirectly the Plaintiff of Equal Protect [sic] of the laws, or of equal privileges or immunities under the laws, or for the purposes of preventing or hindering Plaintiff from pursuing its livelihood under the equal protection of the laws.

> 37. Defendant discriminated against Plaintiff in order to further its illegal policies and customs.

> 38. As a direct and proximate result of Defendant's actions, Plaintiff has and will continue to suffer severe economic injury through the loss of business, due to Defendant's conspiracy.

(Doc. No. 13 at ¶¶ 36–38.) Absent from these three paragraphs are any allegations that the City, and the alleged conspirators, acted with "some racial, or perhaps otherwise class-based, invidiously discretionary animus." *Post*, 33 F.4th at 580. Instead, Plaintiff alleges that the City "discriminated against Plaintiff in order to further its illegal policies." (Doc. No. 13 at ¶ 37.) The Court finds that this vague allegation, is insufficient to allege a racial or otherwise "class-based" discriminatory animus for purposes of stating a § 1985 conspiracy claim.

The Court notes that earlier in the Amended Complaint, under Plaintiff's "Equal Protection" claim (Count Two), Plaintiff alleges that Defendant "intentionally treated Plaintiff differently from similarly situated vendors without a rational basis, resulting in discriminatory impact on Plaintiff as a minority-owned business." (*Id.* at ¶ 29.) The Court, however, finds that this allegation is not sufficient to plausibly allege that the City acted with a "discriminatory animus" towards Plaintiff for purposes of § 1985. Moreover, even if this allegation were construed as such, it is belied by Plaintiff's later allegation that the City "discriminated against Plaintiff *in order to further its illegal policies and*

21

*customs*."  (*Id.* at ¶ 37 (emphasis added).)   In other words, Plaintiff alleges that the conspiracy's purpose was not to discriminate against Plaintiff based on its "minority-owned" status, but instead, "to further [the City's] illegal policies and customs."

Accordingly, the Court finds that Plaintiff has failed to state a plausible § 1985 claim.  *See Pethel v. Tenn. Dep't of Child.'s Servs.*, No. 21-5864, 2023 U.S. App. LEXIS 12744, at *21–22 (6th Cir. May 23, 2023) ("Plaintiffs' failure to allege discriminatory animus dooms their § 1985 claims") (cleaned up); *Tucker v. United States Bank N.A.*, No. 1:17CV572, 2017 U.S. Dist. LEXIS 60648, at *13 (N.D. Ohio Apr. 20, 2017) (dismissing § 1985 claim when Plaintiff failed to allege that "any of the Defendants conspired together to deprive him of his right to equal protection of the law or that their actions were in any way motivated by his race or membership in a protected class"); *Mattox v. City of Jefferson*, No. 1:04CV2257, 2005 U.S. Dist. LEXIS 59633, at *11 (N.D. Ohio July 22, 2005) ("Mattox's claim under §1985 also fails because he does not allege that he was a victim of a conspiracy based upon either racial or class-based invidiously discriminatory animus").

The Court also finds that Plaintiff's § 1985 claim fails for a separate, independent reason. Under Sixth Circuit law, "a §1985(3) complaint must 'allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action.'"  *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992)).  Thus, a § 1985 claim fails when a plaintiff fails to allege that each co-conspirator "acted with discriminatory animus based on a constitutionally protected classification.  *Id.*; *see also Alford v. Schweitzer*, No. 2:24-cv-194, 2025 U.S. Dist. LEXIS 79103, at *26–27 (S.D. Ohio Apr. 25, 2025) (dismissing § 1985 claim when there were no "allegations that Defendants acted with a class-based discriminatory animus to deprive Plaintiff of the equal protection of the law"), *adopted by* 2025 U.S.

Dist. LEXIS 191647, at *7 (Sept. 29, 2025); *Norman v. City of Cincinnati*, No. 1:24-cv-309, 2025 U.S. Dist. LEXIS 45898, at *26 (S.D. Ohio Mar. 13, 2025) (dismissing § 1985 claim when the Plaintiff did not allege how co-conspirators "were motivated on the basis of her race").  Here, the Amended Complaint lacks any allegations the City's co-conspirators (e.g. "Willo Security, and LEMS and Tenable Security") acted with any discriminatory animus based on a constitutionally protected classification.  (Doc. No. 13 at ¶ 36.)  For this reason, Plaintiff's § 1985 claim fails.

Accordingly, for all these reasons, the Court dismiss Count Three of the Amended Complaint.[13]

### D.    The Court lacks original jurisdiction over Plaintiff's remaining claims

Because the Court is dismissing Plaintiff's federal claims, the Court must assess whether it has original jurisdiction over Plaintiff's remaining claims.

The Court finds that it does not have original jurisdiction over Plaintiff's declaratory judgment claim (Count One).  "The Declaratory Judgment Act does not create an independent basis for federal subject matter jurisdiction."  *Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).  "Rather, it provides courts with discretion to fashion a remedy in cases where federal jurisdiction already exists."  *One Beacon Ins. Co. v. Chiusolo*, 295 F. App'x 771, 775 (6th Cir. 2008) (citing *Heydon*, 327 F.3d at 470).

---

[13] Based on the Court's resolution of the merits of Plaintiff's § 1985 claim, the Court need not address the City's alternative argument that Plaintiff's § 1985 claim is barred by the intracorporate conspiracy doctrine.  The Court, however, is concerned by the citation Plaintiff uses to the respond to the City's argument.  Plaintiff cites *Huffman v. County of Los Angeles*, 147 F.3d 1054 (9th Cir. 1998) for the proposition that "Courts have repeatedly held where the conspiracy involves at least one actor outside the governmental entity, the doctrine does not apply."  The word "conspiracy" does not appear once in the *Huffman* opinion and *Huffman* did not involve a § 1985 claim.

Thus, the Court must assess whether it has original jurisdiction over Plaintiff's state law claims. The Court finds that it does not. The City removed this action based solely on federal question jurisdiction under 28 U.S.C. § 1331 based upon Plaintiff's §§ 1983 and 1985 claims. (Doc. No. 1, PageID #2.) The City did not assert diversity jurisdiction in its Notice of Removal. (Doc. No. 1.) Further, there is nothing in the City's Notice of Removal, the Amended Complaint, or anywhere in the record suggesting that Plaintiff and the City have diversity of citizenship.[14] Accordingly, the Court finds that it does not have original jurisdiction over Plaintiff's remaining claims.

### E. Because the Court lacks original jurisdiction over Plaintiff's remaining claims, it declines to exercise supplemental jurisdiction

Having found that the Court lacks original jurisdiction over Plaintiff's remaining claims, the Court declines to exercise supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[A] district court has broad discretion to decide whether to exercise jurisdiction over state law claims." *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 424 (6th Cir. 2015). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *see also Moon*

---

[14] At the October 25, 2025 Contempt Hearing, a member of Plaintiff (Anthony Spencer) informed that Court that all of Plaintiff's members are citizens of Ohio. (Tr. 2:18–3:18.) Neither counsel for Plaintiff nor the City asserted that the Court had diversity jurisdiction over this action at the Contempt Hearing. (Tr. 38:6–39:18.)

*v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

Here, the Court uses its "broad discretion" in deciding not to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *Smith*, 603 F. App'x at 424. The Court concludes that issues of comity support the Court's decision to decline jurisdiction over Plaintiff's state law claims. As other courts have recognized, "[t]he interest in avoiding needless decisions on state-law issues as a matter of comity weighs heavily against supplemental jurisdiction." *Howell v. Buckeye Ranch, Inc.*, No. 2:11-cv-1014, 2013 U.S. Dist. LEXIS 43644, at *21 (S.D. Ohio Mar. 27, 2013); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 522 (6th Cir. 2007) (noting "the Supreme Court's general comity-related principle that residual supplemental jurisdiction be exercised with hesitation, to avoid needless decisions of state law"). Were the Court to retain jurisdiction here, it would be required to delve into numerous purely state law claims. Such purely state-law decisions are better reserved for a state court.

Additionally, considerations regarding judicial economy, convenience and fairness do not outweigh the Court's comity concerns. It is not apparent that it would be *more* convenient or fair to litigate in an Ohio federal, rather than state, court. Plaintiff's principal place of business is in Cuyahoga County and the City of Cleveland is within the jurisdiction of Cuyahoga County. (Doc. No. 13 at ¶¶ 1–2.) Litigating in state court will be at least as convenient for the parties and witnesses as litigating in this Court, as both courts are located only a few blocks apart in Cleveland, Ohio. *See Fox v. Brown Memorial Home, Inc.*, 761 F. Supp. 2d 718, 725 (S.D. Ohio 2011). Moreover, this case has not yet progressed past the pleading stage. No discovery has commenced and no trial date is set.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and will remand the case to state court.

## V.    Conclusion

For the reasons set forth herein, the City's Motion for Judgment on the Pleadings (Doc. No. 18) is GRANTED in part and DENIED in part as follows.  The City's Motion is GRANTED as to Counts Two and Three of the Amended Complaint, which are hereby dismissed with prejudice.  The City's Motion is DENIED WITHOUT PREJUDICE as to Plaintiff's remaining state law claims in the Amended Complaint.

Additionally, the case is REMANDED to the Court of Common Pleas of Cuyahoga County, Ohio from which it was removed.   The Court retains jurisdiction to enforce the terms of the October 30, 2025 Memorandum Opinion and Order.[15]  (Doc. No. 32.)

**IT IS SO ORDERED.**


_s/Pamela A. Barker_
PAMELA A. BARKER
Date:  October 30, 2025                                  U. S. DISTRICT JUDGE

---

[15] *See Spradlin v. Richard*, 572 F. App'x 420, 428 (6th Cir. 2014) ("A court may award attorney fees, contempt sanctions, and Rule 11 sanctions after the action has been terminated because those issues all require the determination of a collateral issue: whether the attorney has abused the judicial process, and if so, what sanction would be appropriate") (internal quotation omitted); *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 645 (6th Cir. 2006) ("the Supreme Court has consistently held that federal courts retain jurisdiction over issues—such as sanctions—that are collateral on the merits").